THE STATE, EX REL. JOHN T. JONES, v. ROBERT B. GRAHAM.

1. **Constitutional Law.** The classification of the cities of the state into classes and sub-classes, and the conferring upon them of corporate powers by acts of the legislature of a general nature, yet the provisions of which are applicable to but one of such classes or sub-classes, is not repugnant to any provision of the constitution.

2. ————: CITIES OF SECOND CLASS: ROAD TAX: The provisions of the act of March 1, 1883, requiring the county treasurer to pay over to the treasurer of cities of the second class having over ten thousand inhabitants all moneys arising from the levy of road tax against or upon property in said city, are not in violation of the vested rights of the county or any officer thereof.

3. ————: ————: ————. Such provisions apply as well to such moneys in the hands of such county treasurer, at the time of the taking effect of said act, as to those levied and collected thereafter, yet are not, for that reason, objectionable as being retrospective.

ORIGINAL application for mandamus.

*A. C. Ricketts (Mason & Whedon with him),* for relator.

*Samuel J. Tuttle,* for respondent.

COBB, CH. J.

This is a relation by John T. Jones, treasurer of the city of Lincoln, against Robert B. Graham, county treasurer of Lancaster county, for a writ of mandamus compelling him to pay certain moneys collected as road taxes on taxable property in said city to the relator as treasurer of said city. The relation is based upon the provisions of the act of the legislature, entitled, "An act to provide for the organization, government, and powers of cities of the second class having more than ten thousand inhabitants," approved March 1, 1883. Comp. Stat., Appendix 1883, chap. 14 a.

Section 31 of said act provides as follows: "The mayor and council shall have the care, supervision, and control of all public highways, bridges, streets, alleys, public squares, and commons within the city, and cause the same to be kept open and in repair, and free from nuisance. But all public bridges exceeding sixty feet in length, over any stream crossing a state or county highway, shall be constructed. and kept in repair by the county;" and section 37 of said act, as follows: "The treasurer of the county shall pay over on demand to the treasurer of any city all money received by him arising from taxes levied belonging to such city, together with all moneys collected as a tax on dogs from residents of such corporation for the use of the general fund therein. And also all the moneys arising from the levy of road tax against or upon property in said city, which shall be expended only upon the streets, grades, and bridges in said city, or within three miles therefrom."

It is set out in the relation that the respondent, as treasurer of Lancaster county, had in his hands on the fourteenth day of May, 1883, and still has, the sum of five hundred and fifty dollars and forty-five cents, arising from the levy of road tax against and upon property in said city of Lincoln, which was by him collected on and prior to March 1, 1883, the time when said act went into effect; also, the further sum of one thousand and thirty-seven dollars and eighty-six cents, money arising from the levy of road tax against and upon property in said city of Lincoln, which was by the said respondent collected subsequent to said first day of March, 1883, and subsequent to the organization of said city of Lincoln under the provisions of the act entitled "An act to provide for the organization, government, and powers of cities of the second class having more than ten thousand inhabitants," approved March 1, 1883, with demand and refusal.

The granting of the writ is resisted, first, on the ground

of the alleged unconstitutionality of the act of March 1, 1883. It is claimed that the act under consideration is in violation of section 15 of article III., of the constitution, which prohibits the passage by the legislature of local or special laws in any of the following cases, to-wit: "Incorporating cities, towns, and villages, or changing or amending the charter of any town, city, or village," or "granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever."

The substance of these provisions was contained in the first constitution of the state, and was borrowed from the state of Ohio, which, so far as my information extends, was the first state to realize the evils of special and local legislation and to provide a constitutional protection against them. But the experiment, for experiment it was and is, met with a serious impediment in its application to laws for the government of cities. It was found that laws and regulations demanded by and necessary to large cities were not necessary to nor their support within the means of many of the ambitious villages which had become incorporated as cities; hence the expedient of classifying the cities of the state according to the population, and enacting general laws applicable to each class respectively. Such laws made applicable only to cities of the first class were upheld, although there were only one or two cities of that class in the state, on the ground that, as the population of the cities of the lower classes was constantly increasing they would or might become cities of the first class, and then such laws would be applicable to them. See *Welker v. Potter et al.*, 18 O. S., 85. But in the case of *State, ex rel., v. Mitchell*, an act of the legislature, which by its provisions was made applicable only to "cities of the second class having a population of over thirty-one thousand at the last federal census," was held to be in violation of the constitution. The court say: "Columbus is the only city in the state having the population named, at the last federal census, and the act there-

fore applies alone to that city, and never can apply to any other. The effect of the act would have been precisely the same if the city had been designated by name instead of by the circumlocution employed."

Before the adoption of the present constitution, we, in this state, had adopted the Ohio expedient of classifying our cities; we had one city of the first and several of the second class. These were not only provided for by general law, but their organization into such classes repeatedly recognized by acts of the legislature, and the opinions and judgments of the supreme court. That the members of the convention of 1875 when they framed the new constitution, or the people when they adopted it, intended to inaugurate a new and different rule in regard to cities has never to my knowledge been directly contended, nor could it be, successfully. The principle of classification then, having been adopted under the old and continued under the new constitution, cannot be limited by the courts, but may, in the discretion of the legislature, be extended to any number of classes and sub-classes; and I am unable to see any objection to the act under consideration, which by its terms applies to all "cities of the second class having more than ten thousand inhabitants," which does not equally apply to the organic law or charter of all the cities in the state. There may or may not be more than one city now in the state to which its provisions apply; but should our population continue to increase in the future as in the past it is reasonably safe to predict that before the end of the present decade there will be twenty. If an act is to be deemed inimical to the provision of the constitution above referred to, simply because in point of fact its operation is confined to one city, then it would follow that our only city of the first class is utterly without legal corporate existence—a state of things which could not have been intended by the framers of the constitution, prominent among whom were several representatives of that city.

The second point made by respondent, but upon which but little stress is laid in the brief, is, that as the law under which the road taxes were levied on the property within the city required the money arising from such taxes to be expended or disbursed in another way, the provisions of the act under consideration, which require the county treasurer to pay the said money over to the city treasurer to be disbursed by the city authorities as therein specified, are, so far as the same may be deemed applicable to the moneys now in the hands of the respondent and claimed by the relator, retroactive and in violation of the vested rights of the county authorities.

Having examined with great care the several authorities cited by counsel for respondent, I am unable to see that the provisions of the act under consideration are violative of either the letter or spirit of any provision of the constitution. It is then the plain duty of the courts to see that the provisions of the act are enforced according to the true intent of the legislature as expressed in the language of the act. We quite agree with Judge Cooley in the text cited by counsel for respondent, that "a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively." But it seems quite clear to me that it was the intention of the legislature in passing the act in question that the whole of its provisions should go into effect at the same time; and hence, that the duty of the county treasurer to pay over to the city treasurer any money which he might have in his hands arising from the source specified on demand of the said city treasurer, became operative immediately upon the taking effect of the law. I do not think that either the county as a quasi-corporation, the county treasurer, or county board has any vested right to these moneys which places them out of the reach of the law as constitutionally enacted by the legislative power. They, or some of them, are the legal custodians of such funds.

The legislature ought not to change such custody, or the law for the control and disposition of such funds, except for good cause; but of such cause the legislature within constitutional limitations is the sole judge. These views are not predicated to any great extent upon adjudicated cases; yet the case of the *People, ex rel. City of Springfield, v. Power, County Judge, etc.*, 25 Ill., 187, is quite in point as to its fact. In the opinion, the court, by the venerable Judge Breese, say: "The whole purpose of the section quoted is merely to apportion the public revenue collected in Sangamon county, such parts of it as are collected in the city of Springfield on property there situate, and such portions as are collected in the county, outside of the city limits, between the two corporations. Both are public corporations, created for public purposes alone, and the revenues derived from them are public property, and in no sense affected by the clauses of the constitution to which reference is made. While private corporations are regarded as contracts which the legislature cannot constitutionally impair, as the trustee of the public interests, it has the exclusive and unrestrained control over public corporations. * * * The revenues of a county are not the property of the county in the sense in which the revenues of a private person or corporation, is regarded. The whole state has an interest in the revenue of a county, and for the public good, the legislature must have the power to direct its application. The power conferred upon a county to raise a revenue by taxation is a political power, and its application, when collected, must necessarily be within the control of the legislature. * * * The act of the legislature nowhere proposes to take from the county of Sangamon, and give to the city of Springfield, any property belonging to the county, or revenues collected for the use of the county clerk. But if it did it would not be objectionable."

I do not think there is any injustice or moral wrong involved in the proposition that these taxes levied upon and

collected off of property within the city limits should be expended upon the streets, etc., of the city; but if there is, the wrong as well as the remedy is with the legislature, and not with the courts.

The writ must issue as prayed.

JUDGMENT ACCORDINGLY.

THE other judges concur.