J. H. McCLAY ET AL. V. CITY OF LINCOLN.

[FILED JULY 1, 1891.]

1. **Municipal Corporations:** ANNEXING UNPLATTED LANDS. Under sec. 1, chap. 53, Rev. Stats. 1866, the commissioners of L. county, upon a petition for that purpose, in 1869, incorporated the town of L. to include certain boundaries. *Held,* That their action was not void, though certain lands not platted were included. (*So. Platte L. Co. v. Buffalo County,* 15 Neb., 605.)

2. ———: TAXES PAID UNDER PROTEST. The town of L. was afterwards incorporated as a city of the first class, including the same unplatted lands, and in the years 1884, 1886, 1887, and 1888 the proper authorities of the city assessed the unplatted lands for taxes and levied thereon taxes for city purposes. On June 4, 1889, remote owners of certain of the unplatted lands, paid taxes thereon under protest and notice, and on June 17, 1889, commenced suit for recovery. *Held,* That such action could not be maintained. (15 Neb., 605.)

3. **Appeal:** SPECIAL LEGISLATION. The provisions of sec. 36, chap. 13, Comp. Stats., that no appeal bond shall be required of the city by any court in any action appealed by the city, *held,* not repugnant to sec. 15, art. 3, of the constitution of the state.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*J. R. Webster,* for plaintiffs in error, cited : *Foxworthy v. Hastings,* 23 Neb., 778; *Touzalin v. Omaha,* 25 Id., 825; *Holmberg v. Hauck,* 16 Id., 337; *Liberman v. State,* 26 Id., 466; *Woods v. Colfax Co.,* 10 Id., 554; *Gudtner v. Kilpatrick,* 14 Id., 351; *Monell v. Terwilliger,* 8 Id., 362; *Asch v. Wiley,* 16 Id., 43.

*G. M. Lambertson,* and *H. J. Whitmore, contra,* cited: *Fractional Sch. Dist. v. Joint Board,* 27 Mich., 3; *Stewart v. Kalamazoo,* 30 Id., 69; *People v. Maynard,* 15 Id., 463; *Shumway v. Bennett,* 29 Id., 452; *South Platte Land Co.*

*v. Buffalo Co.*, 15 Neb., 605 ; *Blanchard v. Bissell*, 11 O. St., 96 ; *People v. Carpenter*, 24 N. Y., 86 ; *Woo Sung v. People*, 107 Ill., 653 ; *Schriber v. Langdale*, 66 Wis., 616 ; Dillon, Mun. Corp., sec. 183 ; *Powers v. Co. Com'rs.*, 8 O. St., 285 ; *Turner v. Althaus*, 6 Neb., 54 ; *Kountze v. Omaha*, 5 Dillon [U. S.], 443 ; *R. Co. v. Com'rs*, 98 U. S., 545 ; *State Trenton Iron Co. v. Yard*, 13 Vroom [N. J.], 363 ; *State v. Piper*, 17 Neb., 617 ; *Ex rel. Selden v. Berka*, 20 Id., 379 ; *Pleuler v. State*, 11 Id., 547 ; *Jones v. Graham*, 16 Id., 74 ; *Boggs v. Washington Co.*, 10 Id., 300 ; *State v. Page*, 12 Id., 387 ; *State v. Palmer*, 10 Id., 206 ; *People v. McCallum*, 1 Id., 182 ; *Ballou v. Black*, 17 Id., 392 ; *State v. Ream*, 16 Id., 683 ; *Com'rs of Hamilton Co. v. Miguels*, 7 O. St., 109 ; *Holmes v. Mattoon*, 111 Ill., 28 ; *Chester v. Wilson*, 15 Ill. App., 239 ; *Com'rs v. Kelsey*, 120 Ill., 484 ; Cooley, Const. Lim., 192.

COBB, CH. J.

This action was brought by the plaintiffs in error in the county court of said county to recover $304.75 for taxes, paid under protest, and alleged to have been illegally levied, upon certain real estate of the plaintiffs, being part of the southwest quarter of section 24, town 10, range 6 east, in said county, and being city taxes for the years 1884, 1886, 1887, and 1888.

The plaintiffs contend that their real estate was not a part of the city of Lincoln at the time the tax was levied, and therefore not assessable for the municipal taxes.

The town of Lincoln was originally incorporated April 7, 1869, by the county commissioners of Lancaster county, under and in accordance with the statute then in force governing the incorporation of towns. That law was as follows: (Sec. 1, chap. 53, Rev. Stat. 1866, vol. 2 Complete Sess. Laws, 127): ·

"If a majority of the taxable inhabitants of any town

within this territory shall present a petition to the commissioners of the same county in which said town is situated, praying that they may be incorporated, and a police established for their local government, designating the name they wish to assume, and if such commissioners shall be satisfied that a majority of the taxable inhabitants of such town have signed the petition, they may declare the town incorporated, and thenceforth the inhabitants within such bounds shall be a body politic and corporate, by the name and style of the town of ———— (naming it), and they and their successors shall be known by that name in law, and have perpetual succession, sue and be sued, defend and be defended, in all courts of law and equity, and may grant, purchase, hold, and receive property, both real and personal, within such town, and lease, sell, and dispose of the same for the benefit of the town, and may have a common seal, and may alter the same at pleasure."

On the 7th day of April, 1869, a petition of the majority of the taxable inhabitants of the town of Lincoln, praying that:

"All of section 26, the west half of section 25, the southwest quarter of section 24, and the south half of section 23, town 10, range 6 east, in said county, be incorporated as a town under the name and style of Lincoln."

A plat showing the boundary of the proposed town was attached to the petition, and on the same day the county commissioners declared officially:

"It is ordered now, by said board of county commissioners, that section twenty-six (26), the west half of section twenty-five (25), the southwest quarter of section twenty-four (24), and the south half of section twenty-three (23), all in town ten (10) north, range six (6) east, in said county of Lancaster aforesaid, be and the same is hereby declared an incorporated town, under the name and style of the town of Lincoln, and it is further ordered that from and after this date the inhabitants residing upon

said described land shall be a body politic and incorporate, by the name and style of the town of Lincoln, and they and their successors shall be known by that name in law, and have perpetual succession, sue and be sued, defend and be defended in all courts of law and equity, and may grant, purchase, hold, and receive property, both real and personal, within said town, and lease, sell, and dispose of the same for the benefit of said town, and may have a common seal, and may alter the same at pleasure, and further may do any and all acts that it is lawful for incorporated towns to do under and by virtue of the laws of this state in relation to incorporated towns."

At the same time the commissioners appointed a board of five trustees for the town.

The land so included within the limits of the town, as its boundaries were on that day established, was in the following shape and condition: All of section 26, the southeast quarter of section 23, the west half of the northwest quarter and the west half of the southwest quarter of section 25, were platted into lots, blocks, streets, alleys; and public grounds by authority of a commission appointed by the state.

The southwest quarter of section 23, the southwest quarter of section 24, and the east half of the northwest quarter and the east half of the southwest quarter of section 25, contiguous to the platted ground, was at that date unimproved and unplatted.

It is the contention of the plaintiffs in error that the county commissioners of that day had no strict authority of law to include within the corporate limits any ground, in excess of ten acres, not used for urban advantages, or to levy and collect taxes thereon for municipal purposes. And that inasmuch as their land, then a tract of 120 acres, in 1869, and unoccupied, was neither platted nor subdivided, it was not legally taken into the corporate limits, and the act of levying taxes for municipal purposes was void.

While it is probably true that the action of the commissioners in taking the ground into the boundaries of the town was unauthorized under section 40 of chapter 14 Comp. Stat., and would not have been conceded by the courts, at that day, as a legal proceeding, had a proper case been made and brought to issue, and while the commissioners themselves might have changed their action under an immediate protest of the owner or the agent of the land, it would now seem too late, from the lapse of time, incompetentcy of the courts, and from continuous usage and custom, to set aside their action in the present proceeding, collateral to it only in the assessment of taxes.

A writ of *certiorari* was brought in the supreme court of Michigan in February, 1873, to reverse the action of a school board in November, 1871, in creating a fractional district, and the court held that "after the lapse of such a time it could be presumed that the district had been organized in fact, officers elected, and expenses incurred. The court will not, at a late day, review the proceedings on *certiorari*, to which the district, or its officers, would not be parties. If proceedings are had it must be by *quo warranto*. (27 Mich., 3.)

It was held in the case of *Stuart v. Kalamazoo District No. 1*, 30 Mich., 69, "that a school district which has assumed to possess and exercise all the rights and franchises of a regularly organized corporation for thirteen years, with entire acquiescence of everybody, is not liable to have the regularity of its organization, or of the legislation under which it acted, called in question thereafter a merely private and collateral suit."

In *People v. Maynard*, 15 Mich., 463, it was held that "where townships have become organized under a statute and have acted for many years, and have been recognized by the various state and local authorities, it is too late to inquire into the validity of the law providing for their original creation, and their corporate existence cannot be questioned."

It was further held, in *Shumway v. Bennett*, 29 Mich., 452, that "the power of determining upon the propriety of incorporating certain territory into a new municipality, and of fixing the boundaries of municipal corporations, is not, in a legal sense, judicial power."

But if the action of the county commissioners might still be reviewed, as to the boundaries of the corporation, it could only be done by a direct proceeding against them, and not in the present action against the corporation. This proceeding is not, in a legal sense, collateral to the injury complained of, and we do not think it can be maintained as a remedy. The same question was before the court in an action to enjoin the collection of municipal taxes by the town of Kearney, in this state. That town was incorporated November 30, 1872, under the same law and by similar proceedings as the city of Lincoln, and there, as here, land not platted and not occupied was included within the limits of the town, and an injunction against the assessment and collection of taxes was applied for on the sole ground that the lands in question were not platted at the time of the incorporation of the town; and it was held that the action could not be maintained. (*South Platte Land Co. v. Buffalo County*, 15 Neb., 605.)

The rule of this decision is supported by other highly respected precedents. One Bissell exhibited a bill of injunction, to restrain the collection of taxes, against the treasurer of Lucas county, Ohio, and the city authorities of Toledo, which taxes had been levied on town lots and lands owned by the plaintiff on the southeasterly side of the Maumee, forming part of the ground which the county commissioners had, on petition of the city council, ordered to be annexed to the city of Toledo. The court of common pleas of Lucas county placed a perpetual injunction on the collection of taxes on the property, but the supreme court of the state held, on review, that "the territory so annexed was contiguous to the original city;

that such annexation might be ordered without the consent
and against the remonstrance of a majority of the persons
residing on the annexed territory, and the lands were liable
to local taxation on account of pre-existing city debts."
The statute under which this decision was rendered is col-
lateral with our own.    The precedent is therefore entitled
to our respect.    It had been held by the supreme court
of Ohio, under the same statute, in the case of *Powers v.
The Commissioners of Wood County*, 8 O. St., 285, that
"The proceedings to annex contiguous territory to the cor-
porate limits of a town in pursuance of that statute, are not
in contravention of the provisions of the constitution of
the state."

In the New York court of appeals, at the December
term, 1861, in the case of *The People v. Carpenter*, 24 N.
Y., 86, it was held that "The act of the supervisors is one
of a legislative character in favor of the regularity of which
all presumptions are to be indulged.    Those who would
impeach it, have the burden of disproving a compliance
with the conditions imposed by law as requisite to the ex-
ercise of the power."    Under this rule, if we accept it, the
plaintiffs have not maintained their proposition that their
land was brought within the taxing jurisdiction of the city
of Lincoln against their protest, and without due process of
law.    Where municipalities are obliged to be organized
under general statutes, no expression of the legislature as to
the exact boundaries incorporated can be made.    The bound-
aries must be set by another method, and by a local gov-
ernment provided by statute.    Unless constitutionally re-
strained, the legislature of a state may delegate this power
to commissioners, supervisors, or trustees; but it has been
questioned how far this power, essentially political and ad-
ministrative, may be conferred upon judicial courts.    We
think that the courts ought not to borrow a power not
plainly conferred, and not necessary to the just administra-
tion of the laws.    No complaint is found in the record of

this case by the original owners of the land annexed. The complaint by subsequent purchasers, twenty years after the fact, is by those representing an insignificant infliction of the original injury—if there be any.

The plaintiffs' remedy, if they had any, is governed by the provisions of sections 144 and 145, of chapter 77 of the Compiled Statutes of 1887.

By section 144, if the tax be levied for an illegal or un-authorized purpose, its collection may be enjoined, or if the person shall pay the tax he may proceed as follows:

"First—If he claim the tax, or any part thereof, to be invalid, for the reason that the property was not liable to taxation, or has been twice assessed in the same year, and taxes paid thereon, he may pay such taxes under protest, and it is made the duty of the treasurer to give a receipt therefor, stating thereon that they were paid under protest, and the grounds of such protest, whether not taxable, or twice assessed, and the taxes paid thereon. Within thirty days after paying such taxes, the person paying them shall file a statement in writing, duly verified, with the county board, setting forth the amount of the taxes paid under protest, the grounds of such protest, and shall attach thereto the receipt taken for said taxes. Whereupon the county board shall inquire into the matter, and if they find that the property was not taxable, or had been twice assessed in the same year, and taxes paid thereon, they shall order the same refunded, otherwise not. Appeals may be taken from the action of the board, as provided in secs. 37, 38, chap. 18, Comp. Stats."

Whether this procedure, which seems intended only for county taxes, may be extended to similar cases of taxes levied by city authorities, need not be considered, as the plaintiffs have not followed the course therein prescribed. No verified statement was filed or appeal taken. This section also provides:

"Second—If such person claim the tax, or any part thereof,

to be invalid, for the reason that it was levied or assessed for an illegal or unauthorized purpose, or for any other reason, except as heretofore set forth, when he shall have paid the same to the treasurer in all respects as though the same was legal and valid, he may, at any time within thirty days after such payment, demand the same in writing from the treasurer, and if the same shall not be refunded within ninety days thereafter, may sue for the same."

This portion of section 144 is qualified by section 145, that:

" When any demand to refund taxes paid is made upon any treasurer, as provided in the second method of procedure indicated in the preceding section, such treasurer shall transmit a copy of the same to the (city council), who shall pass upon the same as upon any other claim."

Sec. 36 of the act governing the city of Lincoln requires all claims to be presented in writing under oath. The claimant, if not satisfied with the action of the council, is given the right to appeal to the district court by giving notice of such appeal to the city clerk within two days, and filing a proper bond within ten days after such action.

The plaintiffs' remedy was, therefore, by appeal from the action of the city council to the district court, leaving out of litigation the county court, which had no jurisdiction of the case.

They seek to recover taxes paid under protest, but there is an uncertainty as to the protest having been made at the time or before the payment of the taxes, or at a later date. It was held in the case of *City of Omaha v. Kountze*, 25 Neb., 60, that the payment must be accompanied by a formal statement in writing setting forth with particularity the grounds of protest and the illegality of the assessment and levy. The date of payment is June 4, 1889, and the demand for repayment June 17 following. By section 144, second subdivision, the defendant had ninety

days from that time in which to refund the taxes, or de-cline to do so.   The summons was issued on June 17, 1889, or within ten days from date of demand.   There is nothing to indicate that the claim had been passed upon by the city council and rejected, and until that was done, and the ninety days had expired, no action could be maintained in any view of this case.   The statute of limitations would not begin to run against the plaintiff's claim until the ex-piration of ninety days from the date of the filing of the demand with the treasurer, hence the right of action did not accrue until the end of the ninety days.

The most serious and elaborate error brought forward by the plaintiffs is "that the special provision of the char-ter of the city of Lincoln, exempting it from giving an appeal bond to bring its defense into a higher court, is un-constitutional, and expressly in violation of sec. 15 of art. 3 of the constitution of this state, that statutes must be uniform in their operation."   We take it that this provis-ion means that the statute shall be uniform as to the classes of persons and things upon which the law operates, and that the section is appliable to all cities of the first class having less than 80,000 and more than 25,000 inhabitants. Every city within the class has the benefit of the provision. It is, therefore, a law framed in general terms, restricted to no locality, and operating equally upon all of a group of objects which, having regard to the purposes of legisla-tion, and distinguished by characterizations sufficiently · marked and important to make, not a special, but a gen-eral law.

It was held in the case of *State, ex rel. D. J. Selden, v. Berka,* 20 Neb., 375, that "A law which is general and uniform throughout the state, operating alike upon all per-sons and localities of a class, or who are brought within the relations and circumstances provided for, is not objec-tionable as wanting uniformity of operation."

The title of the act is believed to be sufficiently broad

and comprehensive, and is not required to contain an abstract of the bill, or to set out the terms of the amendment. (10 Neb., 206 and 300; 12 Id., 387; 16 Id., 383; 17 Id., 392.)

We take it that the general rule now accepted in the law courts of this country is, that the state and its counties, cities, and municipal corporations are not subject to the general law requiring appeal bonds to be given in support of legal controversies, unless required to do so by the terms of a legislative act. The rule is, that in order to bind cities by law, like the one under consideration, the city or any branch of the sovereignty shall be specially named, otherwise it is exempt. When we come to consider the reasons why bonds are required when an appeal is made, we find strong grounds to support this view. All appeals are favored both by the constitution and statutory law, but the law requires, and the courts hold, that when an appeal is taken, the party succeeding in the inferior court shall be protected and adequately secured, hence a bond is required. Now, the reason for a rule, applicable to individuals and corporations, disappears when we come to apply it to cities or municipalities. First, it is almost impossible to obtain a surety on a bond for a city, because no one has such a special interest in the city as would induce him to volunteer as surety. Sureties object to go upon a bond unless they can be indemnified in some way, and there may be no direct means whereby a county, or city, or town, can indemnify any particular person who would become surety in case of an appeal, or when an injunction is to be sued out, and if the provision of the statute is held to apply, it might be very difficult, if not impossible, to take an appeal in many cases. Frequently the amount of judgments against cities and counties is large, running into the hundreds or thousands of dollars. A judgment against the city and surety, while in fact it might not imperil the individual's property, yet might ruin his credit, so that cities and coun-

ties would be obliged to stand upon the judgment of the lower court, if the rule contended for should be sustained. The difficulty of obtaining a surety for a city or county might be greater, because frequently months and years may pass by before the judgment can be collected from the city, and yet the judgment against the surety would stand until the judgment against the city was satisfied.   Second, it appears that an appeal bond is unnecessary, because the holder of the judgment would be no better protected with the bond than without one.   The revenues of a municipality are pledged for the payment of its debts.   This revenue can only be collected by taxation, and a judgment can only be paid out of money that is raised by levy of taxes, and the property of the surety cannot ordinarily be touched as long as the principal has any property upon which a levy of execution can be made, or in fact until all his property is exhausted.   Hence it seems that the requirement of an appeal bond of cities and counties affords no benefit, and is really of no value to a litigant; and there being no reason why the law should extend to such corporations or branches of government, there is no good ground upon which the court can base a decision, that the act in question extends to and is applicable to cities of the first class.

The case of *Woods v. Colfax Co.*, 10 Neb., 554, instead of sustaining the proposition of plaintiff in error, really sustains another position.   The court says: "A county is a mere local subdivision of the state, created by it without request or consent of the people residing therein.   As was said in the case of the *Commissioners of Hamilton Co. v. Mighels*, 7 O. St., 109, 'A county organization is created almost exclusively with a view to the policy of the state at large for purposes of political organization and civil administration in matters of finance, of education, of provision for the poor, of military organization, and of means of travel and transportation, especially for the general administration of justice.   With scarcely an exception, all the

powers and functions of a county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy.'" The decision in question proceeds to hold that a county cannot be held liable for negligence unless there is some special act in fixing the liability of that county on the question. In other words, the county must be named in the act, otherwise it is exempt from liability.

A decision in *Holmes v. City of Mattoon*, 111 Ill., 28, is in point. The court says: "In this case there was an appeal by the city to the appellate court for the third district. In that court a motion was made to dismiss the case, because the city had, under the act of 1879 (Session Laws, 222), appealed without giving bond. It is now urged that section 71, as amended by that act, is unconstitutional, because it relieves all municipal corporations from the law requiring appellants and plaintiffs in error, on obtaining a supersedeas, from giving bond. It is urged, that section is violative of the constitution, because it is special or local legislation. Nothing could be more manifest than that it is not local, because its operation extends to every portion of the state. This is too manifest to require the slightest notice. Had not cases been referred to that, to some extent, favor the position of appellant, that it is special legislation to allow such appeals, we should have been inclined to hold that the proposition could not be raised to the dignity of a constitutional question, and have dismissed it without consideration. We apprehend that no one will or can seriously contend that the state, or the sovereign body exercising the functions of a state, can be sued without its consent and permission, nor can its power to sue and prosecute suits in all of their various stages be limited or controlled, except by its sovereign power properly exercised; nor can the state, representing sovereignty, be rendered liable for costs or damages in prosecuting or defending suits or legal pro-

ceedings, unless it so expressly declares by constitutional provisions or legislative enactment. The state, whatever its form or its powers, has the unquestioned right, as representing the sovereign power, to prosecute and defend all suits and maintain all legal proceedings without cost or other restriction, unless imposed by fundamental law, or self-imposed by legislative enactment. These are axiomatic principles, always admitted and never controverted. From and before the organization of a state, it has ever prosecuted and defended suits, criminal and civil, without liability for costs, damages, or forfeitures, and has prosecuted writs of error without bonds or any restriction whatever, and it is from the fact that sovereign power is not liable to be sued or put to expense in the assertion of its rights, and enforcing the laws for the protection of the governed against violence, wrong, and oppression, and to protect them in the enjoyment of their rights of life, liberty, and general security. It is believed that in no government, in ancient or modern times, has it been required to give bond for the payment of the costs of litigation, before bringing suit, or an appeal, or on error. Such a proposition would be unheard of in the history of government, and no one having the slightest knowledge of the principles of government will contend that any such restriction exists. This being true of the state government, it is necessarily true of all its officers, agents, and instrumentalities, while employed in seeking the rights of the government in courts of justice. Hence, officers suing for or defending the rights of the state are acting for and instead of the state, and to that extent not only may, but should be permitted to do so on the same terms and for the same reasons the state is permitted to sue for or defend its rights. Again, municipalities, such as counties, cities, villages, towns, school districts, and, in, the language of the act, 'all other municipal corporations,' and the corporations of all charitable, educational, penal, or reformatory institutions under the patronage and control

of the state, and all public officers when suing or defending in their official capacity for the benefit of the public, are the instruments of the state to carry out its powers for the public welfare, and in exercising their powers, and enforcing public rights they act as agents, and may have extended to them the same exemptions in suits as belong to the state. Municipal bodies act for the state, and to the extent authorized exercise the powers of government, and when so exercising such powers, they may, when so authorized, do so without conforming to all of the requirements imposed by the practice on natural or artificial persons, created for the purposes of business or gain. The construction contended for would compel the state itself to give bond on appeal, or the granting of a *supersedeas*, in cases where the suit was for the benefit of the state and public welfare. Such a purpose could never have actuated the persons who framed and adopted the constitution." (*Chester v. Wilson*, 15 App. [Ill.], 230; *Com. v. Kelsey*, 120 Ill., 483.)

It must be evident that the authority to declare a legislative act unconstitutional and void, is one which the court will shrink from exercising in any case where it can conscientiously, with due regard to duty and the equal administration of the law, decline the responsibility.

The judgment of the district court is

AFFIRMED.

THE other judges concur.