LIVINGSTON LOAN & BUILDING ASSOCIATION, APPELLANT,
v. W. W. DRUMMOND ET AL., APPELLEES.

FILED SEPTEMBER 16, 1896. No. 6771.

1. **Corporations:** ATTACK UPON ORGANIZATION. One who has entered into a contract with a body of men acting as a corporation cannot, when sued on such contract, be heard to plead the want of legal organization of such corporation.

2. **Building and Loan Associations:** INTEREST: CONSTITUTIONAL LAW. The act of 1873 (General Statutes, 207) providing for the incorporation of building and loan associations, and, among other things, exempting such associations from some features of the general interest laws, is not violative of that section of the constitution which prohibits the legislature from passing any local or special law regulating the interest on money, or granting to any corporation, association, or individual any special privilege, immunity, or franchise.

3. **Statutes:** SPECIAL LEGISLATION. An act is general and not special if it operates alike on all persons or localities of a class, or who are brought within the relations and circumstances provided for, the

classification so adopted by the legislature having a basis in reason and not being purely arbitrary.

4. ———: BUILDING AND LOAN ASSOCIATIONS: LOANS: USURY. The act referred to authorized associations created thereunder to collect money by stated dues, fines, interest, and by premiums bid by members for the right of precedence in taking loans. It also provided that the dues, fines, and premiums, although in excess of legal interest, shall not be construed to make the loan usurious. *Held*, That interest might be reserved at the highest rate permitted by law on the face of the loan, although the premium was deducted from that amount and the difference only paid the borrower.

5. ———: ———: ———: ———. In ascertaining the amount due on such a loan the borrower is entitled to a credit of the present value of the stock at the time of foreclosure, as well as to a fair and reasonable credit on account of unearned premium, and by-laws fixing the terms of ascertaining such credit will be enforced where not unconscionable.

APPEAL from the district court of Cass county. Heard below before CHAPMAN, J.

*Matthew Gering*, for appellant.

*E. H. Wooley*, contra.

IRVINE, C.

The plaintiff in this action sought to foreclose a mortgage executed by Drummond and his wife to secure the payment of a bond for $2,000, bearing ten per cent interest. The defenses interposed were three: First, that the corporation was not legally organized; second, that Drummond was insane at the time of making the contract; third, usury. There was no finding by the trial court on the issues raised by the first defense; but the defense was wholly without merit and the appellant has no ground of complaint. It is provided by section 144, chapter 16, Compiled Statutes: "No body of men acting as a corporation under the provisions of this subdivision shall be permitted to set up the want of legal organization as a defense to any action brought against them as a corporation; nor shall any person sued on a contract made with such corporation, * * * be permitted to set up the

want of legal organization in defense of such action."
Drummond and his wife in their answer admitted the
execution of the bond and mortgage which formed the
basis of the action, and they are thus brought within the
provisions of the statute cited. It has often been as-
serted by this court, even in cases where this statute was
not in terms applicable, that the validity of a corpora-
tion may be attacked only by the state in a direct pro-
ceeding for that purpose, and this principle has been
enforced in a case precisely like the one before us. (*Lin-
coln Building & Savings Association v. Graham*, 7 Neb., 173.)
As will shortly appear, the association is in this case
claiming the benefit of a statute relating to a particular
kind of corporation, and it follows that such benefit could
not be claimed unless the corporation brought itself
within that class, and also brought the transaction
within the class of transactions to which the benefit
is accorded. But the defense here sought to be inter-
posed was not that the corporation, if it existed as such
at all, was not within the class created by the statute, or
that it was not acting as such. The defect alleged was
merely that the articles of association were not signed
by a sufficient number of incorporators. This amounted
to a denial of the general corporate existence, and is
within the principle referred to. There was not a parti-
cle of evidence introduced in support of the second de-
fense, so that may be passed. We are, therefore, brought
to a consideration of the plea of usury. On this the court
found for the defendants.

The plaintiff is a building and loan association organ-
ized and conducting its business in so familiar a manner
that it is hardly necessary to enter into details with re-
gard either to its constitution or the terms of this par-
ticular contract. It is sufficient to say that the scheme
was the usual one whereby stock was issued (in this case
at a par valuation of $200 per share) payable $1 on each
share monthly. The funds thus realized were let out at
interest to the highest bidder, the amount paid for a

preference in obtaining loans being designated as a "premium." The borrowers were confined to the stockholders, and a borrower, in addition to securing his loan upon real estate, was required to hypothecate his stock as further security. Payments were made upon the stock as before, and in addition thereto he paid his interest monthly in advance, and was also subject to certain fines for delinquency in payments. Prior to 1873 there was no law specially authorizing such corporations. In that year an act was passed (General Statutes, p. 207), in terms authorizing the incorporation of such associations. The first section of this act was as follows: "That any number of persons, not less than five, may associate themselves together and become a corporation, as is provided in chapter 25 of the Revised Statutes, commencing at section 123 of said chapter, under the title of 'Corporations,' for the purpose of raising money to be loaned among the members of such corporation, for use in buying lots or houses, or in building or repairing or removing incumbrances from houses; and such corporation shall be authorized and empowered to levy, assess, and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced, and premiums bid by members for the right of precedence in taking loans, as the corporation, by its by-laws, shall adopt; also to acquire, hold, incumber, and convey all such real estate and personal property as may be legitimately pledged to it on such loans, or may otherwise be transferred to it in the due course of its business; *Provided*, That, the dues, fines, and premiums so paid by members of such corporation, although in excess of twelve per cent per annum on loans taken by them, shall not be construed to make the loans so taken usurious; *And provided, also*, That no person shall hold more than ten shares in any such association in his own right, each share not to exceed two hundred dollars." The law so stood until 1891, when another act was passed (Session Laws, 1891, ch. 14) providing much more in detail for the organization and government of such corpo-

rations. This corporation was organized under the act of 1873, and the contracts in question were all entered into before the act of 1891 was passed.

As appellant claims some rights under the theory of a ratification by the law of 1891, and the operation of a doctrine of relation with reference thereto, it is best at this point to dispose of these questions. The constitution of the United States prohibits a state from passing any law impairing the obligations of a contract. It therefore follows that the contractual rights of the parties, which were fixed prior to the enactment of the law of 1891, are not in anywise affected thereby. The case must stand entirely upon the law as it stood when the contract was made, and under no theory whatever could a subsequent act of the legislature be permitted in the slightest particular to affect contractual obligations as fixed by the law at the time they were entered into. *Lincoln Building & Savings Association v. Graham, supra,* held, with regard to just such a contract, that express provisions of the law of 1873 by which it was sought to remove the taint of usury from past transactions were unconstitutional, and that the law could not be given a retroactive effect. We therefore dismiss all consideration of the act of 1891.

The appellees base their principal argument upon an attack on the constitutionality of the law of 1873. It is claimed that it is an infringement of section 15, article 3, of the constitution, which prohibits the legislature from passing local or special laws regulating the interest on money, or granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise. The constitution of 1866, which was in existence when the law of 1873 was enacted, contained no such inhibition; and we do not wish to be understood, in considering the merits of the arguments presented, as holding that a law valid under the constitution as it existed when the law was enacted is rendered nugatory by the subsequent adoption of a constitution containing nothing repugnant to the substance of the law, although it may

contain provisions which would prohibit the passage of any future law of similar character. As the conclusion we have reached would sustain the law under consideration even had it been passed after the adoption of our present constitution, we do not consider the question suggested. Examining the law with reference to the provisions of the present constitution, we do not think that it is a local or special law. It has been very often decided by this court that if a law is general and uniform throughout the state, operating alike upon all persons and localities of a class, or who are brought within the relations and circumstances provided for, it is not objectionable as wanting uniformity of operation, or as being in the nature of special legislation. (*State v. Berka*, 20 Neb., 375; *State v. Graham*, 16 Neb., 74; *McClay v. City of Lincoln*, 32 Neb., 412; *State v. Robinson*, 35 Neb., 401; *Hunzinger v. State*, 39 Neb., 653; *Van Horn v. State*, 46 Neb., 62.) To this general statement it is perhaps necessary to add a qualification. The legislature may not arbitrarily and without any possible reason create a class to be affected by legislation where the result would be an infringement upon the constitutional prohibition. This feature is very ably considered in the case of *Vermont Loan & Trust Co. v. Whithed*, 2 N. Dak., 82, and has been adverted to in this state in *McClay v. Lincoln, supra*, and in *Low v. Rees Printing Co.*, 41 Neb., 127. But subject to that qualification a law is not special when it applies to all citizens and persons who may be brought under the circumstances affected thereby; and in this case we cannot see that the classification is arbitrary and without reason. The act provides for a certain class of corporations having definite objects in view. Their loans are made on a particular kind of security. Payment is provided in a special manner. The borrowers are always members of the association. We must take notice of the fact that, wisely or unwisely, for many years many states, and England as well, have pursued a policy of encouraging the operation of such associations as facilitating the building of homes for the people, and the public

policy thereby involved would justify the legislature in its wisdom in classifying loans for such purpose, and made in such ways, as a group by themselves and subject to different restrictions and privileges than those applying to loans generally. In other states having similar constitutional provisions such legislation has, on the. ground hereinbefore indicated, been uniformly, so far as we can ascertain, sustained. (*Vermont Loan & Trust Co. v. Whithed, supra; People's Building & Loan Association v. Billing*, 62 N. W. Rep. [Mich.], 373; *Holmes v. Smythe*, 100 Ill., 413; *McLaughlin v. Citizens Building, Loan & Savings Association*, 62 Ind., 264.) *Gordon v. Winchester Building & Accumulating Fund Association*, 12 Bush [Ky.], 110, is a case which has sometimes been cited as denying the constitutionality of the law relieving such associations from the operation of the general usury law, but the act under which the privilege was claimed was not a general law permitting such corporations and extending privileges to them generally, but it was a special act incorporating the particular corporation in question, and extending to it alone an exemption from the usury law.

For the purpose of brevity we content ourselves on the subject of the constitutionality of the act of 1873 with the foregoing observations. *Lincoln Building & Savings Association v. Graham, supra*, is not applicable to this case, because it related to a contract made before the act of 1873 went into. effect. That case, however, does settle definitely for this state the much controverted question as to whether such a transaction as that in controversy is a loan, or an advancement on the stock, and it holds it to be a loan. (See, also, *Randall v. National Building, Loan & Protective Union*, 42 Neb., 809, 43 Neb., 876.) Therefore, the very numerous cases discussing the last question suggested, as well as those equally numerous discussing the question of usury where no express statute exists exempting such corporations from the operation of the general usury laws, are wholly inapplicable. This statute does in terms to a certain extent exempt such cases from the

operation of the general laws relating to interest. It is not a special or local law regulating interest on money or granting to a corporation a special privilege, immunity, or franchise, and is not invalid for any of the reasons suggested.

It is suggested in the briefs that the decision of the district court went upon the ground that the premium was deducted from the face of the loan, the highest rate of interest allowed by law being reserved on the whole face of the loan, and that while the statute may permit the taking of premiums it does not permit the charging of interest upon such premiums. The loan was for $2,000. The premium bid was $360. One thousand six hundred and forty dollars were advanced, and the bond was made for $2,000, with interest at ten per cent per annum. It is clear, therefore, that if the right to charge interest upon the premium is not given by statute, this particular loan was usurious. The question thus presented is by no means clear, and the authorities are divided. Ohio, in 1867, passed a statute so nearly like our act of 1873 as to compel the inference that ours was modelled upon the former. Construing this statute the supreme court of Ohio held (*Forrest City United Land & Building Association v. Gallagher*, 25 O. St., 208) that while the statute forbade considering the fines, dues, and premiums as equivalent to interest so as to render the contract usurious, it nevertheless did not permit charging interest upon the premium. The case has been followed in Ohio by several others. Such also is the law of Iowa. (*Hawkeye Benefit & Loan Association v. Blackburn*, 48 Ia., 385.) The principle which seems to govern these cases is that the exception to the usury law accorded to building and loan associations by statute should be strictly construed, and we are of the opinion that public policy requires that such exceptions should not be extended by unnecessary implication. This principle of strict construction was also approved in *Pfcister v. Wheeling Building Association*, 19 W. Va., 676. On the other hand, it has been elsewhere held that where

the taking of premiums is not illegal the reserving of interest thereon is proper. (*Citizens' Mutual Loan & Accumulating Fund Association v. Webster*, 25 Barb. [N. Y.], 263; *Bowen v. Lincoln Building & Loan Association*, 28 Atl. Rep. [N. J.], 67.) We are not bound by the construction placed upon the statute by the Ohio court, because the first case so construing it was not decided until after our legislature adopted the statute. The construction given the same statute by the courts of a sister state would, in any event, however, be entitled to great respect; and we would follow it here but for what we deem to be the superior reasoning of the courts of New York and New Jersey. If the right to reserve a premium be admitted, it follows that the premium may be made presently payable or payable in the future; and if made payable in the future, then we can see no reason why interest may not be reserved upon it. There are two ways of looking at this transaction. It may be considered as a loan of $1,640 with credit given for the premium of $360 until the maturity of the loan. In that event the reservation of interest upon $2,000 would be free from objection. Or, it may be considered as a loan of $2,000, out of which the borrower immediately pays the premium. So regarded, interest on $2,000 is merely interest upon the actual loan. While we think the statute should in this respect be given so strict a construction as not to unnecessarily extend it beyond its terms, we can see no reason for allowing the premium and refusing interest upon it, where the terms of the loan are as they were here. It follows that the transaction was not usurious.

In computing the amount due, general indications of the views of the court were given in *Randall v. National Building, Loan & Protective Union*, 43 Neb., 876. The borrower is entitled to have all payments made by him credited upon the loan, and this the association in this case offered to do. He is also entitled, under the by-laws of this association, and the offer made by it in its pleadings, to a credit of one-eighth of the premium for each year

remaining which the loan would in its regular course have
to run according to the computations of the association;
that is, it was calculated that the series of stock would
mature in eight years, and the by-laws therefore provided
for a settlement on that basis.   This was a part of the
contract between the parties and it does not seem uncon-
scionable.   Furthermore, we do not think that the bor-
rower is necessarily restricted, in his credit upon the prin-
cipal, to the amounts paid by him in the way of dues.
As we have said, the law is settled for this state that the
transaction is a loan.   The stock is pledged as collateral
security.   While ordinarily a creditor, holding a real es-
tate mortgage and also chattel security, may proceed to
exhaust either, it is clear that the by-laws of this associa-
tion contemplate in the case of winding up a loan that the
stock shall be extinguished in the process.   It follows
from this that the association absorbing the stock should
allow a credit not merely for the amount of payments
made on it, but for its present value at the time of fore-
closure.   We cannot at this time enter into greater detail.
The question litigated was that of usury, and an account-
ing on the basis of a valid contract was not entered into
in fact, although the basis therefor appears in the evi-
dence.   This accounting can best be had in the district
court, the judgment of which is reversed and the cause
remanded with directions to award a decree of foreclos-
ure on the basis of a legal transaction, and in accordance
with the principles here expressed.

REVERSED AND REMANDED.