CECIL O. CAMPBELL, APPELLANT, V. CITY OF LINCOLN, A CITY OF THE PRIMARY CLASS, ET AL., APPELLEES.

155 N. W. 2d 444

Filed January 5, 1968. No. 36677.

Merril R. Reller and John McArthur, for appellant.

Ralph D. Nelson, Jack B. Lindner, Carl C. Kopines, Richard R. Wood, and James M. Winter, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This action was brought by Cecil O. Campbell, a resident, inhabitant, taxpayer, and real property owner of the village of West Lincoln, hereafter referred to as village, after the village council refused to do so. The council had earlier adopted a resolution to contest annexation, but rescinded that action at a special meeting. This action seeks to declare Legislative Bill 586 (Laws 1965, c. 43, p. 238), hereinafter referred to as L.B. 586, unconstitutional and void, and to declare an annexation ordinance of the city of Lincoln, hereinafter referred to as city, passed pursuant thereto, invalid. The action was filed January 3, 1966, the day before the annexation ordinance adopted by city was to become effective. A temporary injunction was denied and the ordinance became operative. The trial court found L.B. 586 constitutional and valid, and plaintiff perfected this appeal.

Plaintiff contends L.B. 586 is unconstitutional for the following reasons: (1) It is special legislation; (2) the title thereof covers more than one subject; (3) city brought itself within the provisions of L.B. 586 by gerrymandering and annexing agricultural lands, rural in character; (4) village is not contiguous to present city boundaries; (5) L.B. 586 creates an unreasonable classification with no real benefit to either the city or the village; and (6) L.B. 586 is fundamentally unfair.

The burden is on one who attacks a statute or an ordinance valid on its face and enacted by lawful authority to prove facts to establish its invalidity. Wagner v. City of Omaha, 156 Neb. 163, 55 N. W. 2d 490.

Is L.B. 586 special legislation and repugnant to the provisions of Article III, section 18, Constitution of Ne-

braska? This provision reads in part as follows: "The Legislature shall not pass local or special laws in any of the following cases, that is to say: * * * Incorporating Cities, Towns and Villages, or changing or amending the charter of any Town, City or Village."

There is now and for the foreseeable future there will be only one city of the primary class in Nebraska. This point is adequately discussed in State ex rel. Jones v. Graham, 16 Neb. 74, 19 N. W. 470. We there held: "The classification of the cities of the state into classes and sub-classes, and the conferring upon them of corporate powers by acts of the legislature of a general nature, yet the provisions of which are applicable to but one of such classes or sub-classes, is not repugnant to any provision of the constitution."

The following language from State ex rel. Jones v. Graham, *supra*, is particularly pertinent herein: "The substance of these provisions was contained in the first constitution of the state, and was borrowed from the state of Ohio, which, so far as my information extends, was the first state to realize the evils of special and local legislation and to provide a constitutional protection against them. But the experiment, for experiment it was and is, met with a serious impediment in its application to laws for the government of cities. It was found that laws and regulations demanded by and necessary to large cities were not necessary to nor their support within the means of many of the ambitious villages which had become incorporated as cities; hence the expedient of classifying the cities of the state according to the population, and enacting general laws applicable to each class respectively. Such laws made applicable only to cities of the first class were upheld, although there were only one or two cities of that class in the state, on the ground that, as the population of the cities of the lower classes was constantly increasing they would or might become cities of the first class, and then such laws would be applicable to them."

The annexation authority of a city of the primary class is much more restricted than that of a city of the metropolitan class. By L.B. 586, the authority of a city of the primary class was broadened to permit the annexation of any village within the limits of such city which it serves with water service or supply or with a sanitary sewerage system or service or both.

The problem here, if one exists, is the fact that L.B. 586 is much more restrictive than necessary. It is difficult to understand why those interested in the bill deemed it necessary to add, "and which it serves with water service or supply or with a sanitary sewerage system and service, or both such water and sanitary sewerage service." It is this language which poses the question. If the quoted language had been omitted, there could be no question the act would be of general application.

The classification must be such that it can readily apply to other cities which might come into the class. As we said in Axberg v. City of Lincoln, 141 Neb. 55, 2 N. W. 2d 613, 141 A. L. R. 894: "A valid classification of cities for purposes of legislation must admit of additions to it. It must not be so constituted as to preclude addition to the numbers included within it."

It is fairly obvious that a city growing sufficiently to move into the primary class could gradually surround an adjoining village. It is not so obvious that the village would be dependent on that city for either its water or sewerage facilities. The more restrictive the statute the more likely that it must be considered special legislation. Village is the only incorporated village within a primary city receiving its water and sewerage service from that city. City has furnished village with water for the past 30 years. It is furnishing sewerage facilities only because of the transfer of Sanitary District No. 1 to it in 1957. Prior to that time, Sanitary District No. 1 had supplied sewerage facilities to village for many years. While it is not necessary to decide whether L.B.

586 would have been special legislation if the conjunction "and" had been used, and while we question any particularization, we do decide that the use of "or" permits a determination that the classification is a reasonable one. We recognize the, definite probability that a village surrounded by a primary city might eventually depend on the city for either water or sewerage service, and hold that the restriction to one or the other does not narrow the class to the point that it violates the constitutional provision.

Plaintiff contends L.B. 586 is violative of the portion of Article III, section 14, Constitution of Nebraska, which provides: "No bill shall contain more than one subject, and the same shall be clearly expressed in the title."

The title of L.B. 586 is as follows: "AN ACT to amend sections 15-113, 15-115, 15-116, 15-117, and 15-118, Reissue Revised Statutes of Nebraska, 1943, and section 15-104, Revised Statutes Supplement, 1963, relating to cities of the primary class; to authorize such cities to annex any village within the limits of such city which it serves with water or sanitary sewerage service; and to repeal the original sections." Clearly the title is in full compliance with the above requirement. There is no merit to this assignment.

Plaintiff argues that L.B. 586 creates an unreasonable classification and is fundamentally unfair. Municipal corporations are subject to legislative control and the annexation authority of a municipality is within the exclusive discretion of the Legislature. Courts have the power to inquire into and determine whether conditions exist which authorize annexation. However, it is not for the courts to determine which portions may be properly annexed. The fixing of boundary lines is within the exclusive domain of the Legislature. Bierschenk v. City of Omaha, 178 Neb. 715, 135 N. W. 2d 12.

Many of plaintiff's constitutional contentions were answered 60 years ago in Hunter v. City of Pittsburgh, 207 U. S. 161, 28 S. Ct. 40, 52 L. Ed. 151, which enunci-

. ated the following principles: "Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole, or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right by contract or otherwise in the unaltered or continued existence, of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from these injurious consequences. The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it."

Plaintiff suggests that L.B. 586 gives city vast eminent domain rights without compensation. There is no foundation for this allegation. The power granted must be properly exercised. Any exercise of the power of eminent domain is subject to the constitutional mandate, "The property of no person shall be taken or damaged for public use without just compensation therefor." Art. I, § 21, Constitution of Nebraska.

Plaintiff also complains that to complete the requisites necessary to fulfill the requirements of L.B. 586, city in 1964 annexed agricultural land on the north side of village and there were then no present plans for the development of said area. While it is unnecessary to discuss this assignment because plaintiff cannot collaterally attack those proceedings (McClay v. City of Lincoln, 32 Neb. 412, 49 N. W. 282), we do make the following observations: The record fails to indicate that plaintiff or village had any interest of any nature in the land north of the village annexed by city. There is nothing in this record to show any protest or objection of any nature to this annexation by the property owners involved or anyone else. Section 15-104, R. S. Supp., 1965, permits city to include within its limits contiguous or adjacent lands for municipal purposes except that agricultural lands cannot be included where the sole object is to increase the revenue of the city. Witham v. City of Lincoln, 125 Neb. 366, 250 N. W. 247. City's brief succinctly describes the area as follows: "This land is in a triangle of which the village is the base, one side is Interstate 80, and the other side is Interstate 180 * * *. This land is near all city utilities. It is adjacent to the Lincoln Municipal Airport, a large facility involving several square miles. It is adjacent to the tracks of the Union Pacific Railroad and of the C. B. & Q. Railroad. There was testimony by the Planning Director and by a qualified land appraiser that the land is essentially urban in character * * *."

For the reasons set forth above, we conclude that the

judgment of the trial court is correct and should be and is affirmed.

AFFIRMED.