REQUESTED BY: Dear Senator Maresh:
You have requested our opinion on LB 739, introduced by Senator Kremer, for the purpose of postponing the dissolution of water conservation districts until January 1, 1987. In your letter you state that in 1971 LB 544 amended section46-614.01 to prohibit the formation of any ground water conservation districts after January 1, 1972 existing water conservation district were, however, allowed to remain in existence. LB 411 enacted in 1978 with an operative date of January 1, 1982, repealed sections 46-614 to 46-634 and will therefore, when operative, presumably dissolve all existing water conservation districts. LB 739, Referred to above and in question herein, would postpone such dissolution until January 1, 1987.
With that backdrop in mind, you ask:
 "Is LB 739 not special legislation, contrary to Neb. Constitution Article III § 18, in that it continues the privilege of counties with existing ground water conservation districts to maintain such districts while not allowing formation of new districts. If LB 544 and LB 411 were intended to phase out the districts, then why extend the life of such districts. If the districts are beneficial, then is it not special legislation to not allow formation of new districts while at the same time continuing the privilege of counties with existing districts."
Article III, section 18, of our State Constitution applies to the legislative branch of government and as such is a limitation of its power. That section enumerates several categories regarding which `local' or `special' laws may not be passed.
The concluding sentence of Article III, section 18, further provides:
 ". . . In all other cases where a general law can be made applicable, no special law shall be enacted. . . ."
As we understand it, it is your contention that LB 739 is local or special legislation because the proposed operation is to continue to restrict the formation of new water conservation districts while perpetuating the existence of those already created. Further, you appear to contend that the act does not have uniform operation because it allows some citizens to have water conservation districts while at the same time withholding that option from citizens of other counties.
Your questions are interwoven and will therefore be discussed in the same connection. We begin our discussion by observing that in a sense it is true that according to its terms LB 739 does not operate on citizens alike it does have limited operation. However, it must be further observed, that it is a limitation founded on adherent conditions and not upon a specific locality, geographical territory, number or class. That being true, we are of the opinion that there is no force to the contention that LB 739 must be condemned as a `special' law.
The words of our Constitution set forth above were employed to describe a type of legislation which our forefathers sought to prohibit. The pernicious evil the framers sought to eliminate were acts which were both local and special local as to the territory to be affected and special as to the powers authorized to be exercised. i.e., special privileges which were bestowed on individuals or select groups due to special circumstances. Cox v. State,134 Neb. 751, 279 N.W. 482 (1938) provides an illustrative example. In that case, the Fifty-Second Session of the Nebraska Legislature passed LB 20 which, in substance, waived the sovereignty of the state, the statute of limitations, created liability on the part of the state for negligence of its agents and servants causing injury to the plaintiff, provided for the bringing of suit in district court for Lincoln County, designated the attorney general to represent the state, and provided for payment out of the general fund of the state of any judgment finally rendered against the state. Upon review, our Supreme Court stated that: `To uphold this legislation would require individuals, similarly situated, to knock at the door of the legislature and ask that an exception be made in their particular cases, while others, less fortunate, may not be able to obtain the relief sought. . . . The act provides a special exemption in favor of this plaintiff the right to recover damages which it would deny to all other persons similarly situated.' LB 20 at issue in Cox v. State, supra, was held to be void and in contravention of Article III, section 18, as a `special' law.
While the underlying facts of Cox, supra, are somewhat extreme, they do serve to illustrate the type of legislation contemplated by the inclusion and terms of Article III, section 18. A more elegant description is found in `Cooley on Constitutional Limitations' at page 29, wherein it is said: `The purpose of this guarantee was to protect a Union founded on republican principles against aristocratic and monarchial invasions.'
From the foregoing comes readily the conclusion that LB 739 does not run afoul of Article III, section 18. That conclusion is strengthened by recognition of the fact that LB 739 does not specify that its operation is to occur or affect a specific place or locality. Therefore, it could not, in the very nature of things be, `special' legislation. See, Hunzinger v. State, 39 Neb. 653, 58 N.W. 194 (1894);State v. Berka, 20 Neb. 375, 30 N.W. 267 (1886); State v.Missouri Pacific Railroad Co., 81 Neb. 15, 115 N.W. 614
(1908).
In researching your question, we considered legislation concerning municipalities, which in turn involved many of the same principles. That research, in turn, buttressed our conclusion. More specifically, we note that the practice of municipal classifications each class being granted powers in differing respects from those enjoyed by others dates back to the organization of our state. Our high court has uniformly recognized that practice as being within legislative authority. See, Campbell v. City of Lincoln, 182 Neb. 459,155 N.W.2d 444 (1968); Metropolitan Utilities Districtv. The City of Omaha, 171 Neb. 609, 107 N.W.2d 397 (1961). Along those same lines, we note that our high court inBurger v. City of Beatrice, 181 Neb. 213, 147 N.W.2d 784
(1967), admonished: `Municipal corporations are legislative creations and as such, subject to dissolution by legislative action.' Similarly, in State ex rel. Anderson v. Leahy,189 Neb. 92, 199 N.W.2d 713 (1972), our Supreme Court reiterated the notion that municipal corporations are purely entities of legislative creation. As such, the Legislature may, at its pleasure, repeal a charter or destroy a municipal corporation, with or without the consent of its citizens. The foregoing principles apply with equal force, we believe, to the water conservation districts now in question.
Going back to an observation made earlier in this opinion, i.e., that LB 739, does, in effect, classify we believe there is one remaining reason that the resultant classification does not render it constitutionally infirm. That reason arises from the recognition of the fundamental authority which rests in the Legislature to classify. In that connection, our Supreme Court has said at other times, in other contexts, that it is `within the power of the legislature to enact such special legislation covering the matters involved . . . where, in its judgment, the subject or matters sought to be remedied could not be properly remedied by a general law, and where the Legislature has a reasonable basis for the enactment of the special law.'
State v. Wallace, 117 Neb. 588, 221 N.W. 712, 713 (1928). See too, Cox v. State, supra; Hall v. State, 129 Neb. 669,262 N.W. 835 (1935).
In this instance, LB 544 passed in 1971 prohibited the formation of new ground water conservation districts. Hence, it was that act, which placed a moratorium on the formation of such districts. LB 411 passed in 1978, with an operative date of January 1, 1982, will presumably extinguish the existence of ground water conservation districts organized pursuant to sections 46-614 to 46-634. LB 739, introduced by Senator Kremer seeks, apparently, to perpetuate the survival of existing ground water conservation districts until 1987. We note that section 46-629, which enumerates the general powers of the board of directors of conservation districts, includes, inter alia, in subsection 4, the authority to contract with private individuals, associations, corporations, state agencies and/or subdivisions. In light of the imminent demise of ground water conservation districts and in recognition of their authority to contract, promulgate and administer policies relating to ground water, adopt and administer and enforce rules and regulations, etc., the Legislature could determine, via the passage of LB 739, that time remaining between now and January 1, 1982, is not sufficient for existing ground water conservation districts to complete any contractual obligations, programs, policies, etc. now underway.
While on the one hand, placing existing ground water conservation districts on notice that their futures are marked, but nevertheless extending the time in which to conduct their business accordingly, it seems inherently reasonable for the Legislature to simultaneously prohibit the formation of new ground water conservation districts to prevent further entanglement of contractual and other obligations by such districts when their demise would be imminent. A legislative classification which rests on the above or similar considerations falls comfortably within the confines of constitutionality. Hence, we are of the opinion, that LB 739 is not violative of Article III, section 18, of our State Constitution.
Secondly, your letter poses the following question:
 "Also, I would ask whether the continuing prohibition against new districts does not deny citizens in counties without districts the power of petition reserved to the people by Article III, section 2 of the Nebraska Constitution."
Article III, section 2, of the Nebraska Constitution provides in pertinent part that:
 "The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature. This power may be invoked by petition wherein the proposed measure shall be set forth at length.
 If the petitioner be for the enactment of a law, it shall be signed by seven per cent of the electors of the state and if the petition be for the amendment of the Constitution, the petition therefor shall be signed by ten per cent of such electors. In all cases the electors signing such petition shall be so distributed as to include five per cent of the electors of each of two-fifths of the counties of the state and when thus signed the petition shall be filed with the Secretary of State, who shall submit the measure thus proposed to the electors of the state at the first general election held not less than four months after such petition shall have been filed. . . ."
As can be seen, the power of initiative reserved by and to the people in Article III, section 2, of our State Constitution, applies to `laws' and `constitutional amendments' which can be `adopted by the people independently of the Legislature.' Article III, section 2, specifies that seven per cent of the electors of the state must sign petitions for an enactment of a law and ten per cent must sign for an amendment to the Constitution. The formation of ground water conservation districts by petition pursuant to sections46-614, et seq., involves very different procedures. Furthermore, a reading of Article III, section 2, renders it quite apparent, that the formation of such districts is simply not the type of activity to which the provisions and terms of Article III, section 2 are applicable. Accordingly, LB 739 does not run afoul of it. Cf. Schroeder v.Zehrung, 108 Neb. 573, 188 N.W. 237 (1922).
It is of course, the courts, who must be the final arbiters of whether or not the Constitution has been contravened. Until such time as our high court has an opportunity to address and decide the questions you pose, we are limited to reaching a conclusion on the basis of the principles of law which we believe to be controlling and applicable. In that connection, it is our opinion, and we are thereby advising you, that LB 739 while perhaps somewhat vulnerable, does not transgress constitutional limits.