JOHN GILLIGAN, APPELLEE, V. JOHN GILLIGAN COMPANY, APPELLANT.

FILED OCTOBER 17, 1913.   No. 16,824.

1. Corporations: ACTION ON NOTE: ESTOPPEL. In this an action against a corporation to recover upon a promissory note duly authorized and executed by its officers, the defendant denied its legal existence as a corporation. Held, That under section 144, ch. 16, Comp. St. 1911, such a defense is not permissible.

2. Bills and Notes: ACTION: DEFENSES. Under the facts set forth in the opinion, held that the defense of fraud and no consideration were not established.

3. Appeal: CONFLICTING EVIDENCE. The findings and judgment of a district court, in a law action tried without a jury, based upon conflicting evidence will not be set aside unless clearly wrong.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. Affirmed.

Edwin Falloon, for appellant.

Paul Jessen and Matthew Gering, contra.

LETTON, J.

Prior to 1906 the plaintiff, John Gilligan, was engaged in the business of contracting and bridge building at Falls City, Nebraska. His business was quite extensive, being carried on in a number of states. On or about September 18, 1906, he sold and transferred the entire business to the defendant, the John Gilligan Company, a corporation which was formed for the express purpose of purchasing and carrying on the business. At the time of the sale an inventory or estimate was made out and shown to the prospective stockholders, specifying in detail the character of the assets and property and the value of the respective items of the same. Sixty thousand dollars par value in stock was delivered to Mr. Gilligan in payment for the business. Afterwards, about March 22, 1907, it was discovered that a number of the items scheduled had ap-

parently been overvalued, and the plaintiff then voluntarily surrendered to the corporation shares of stock to the amount of $18,500 in face value in order to reduce the consideration money sufficient to offset the excessive valuation. Immediately after the sale of the business the corporation took charge of it and carried it on. One of the contracts on hand was concerned with drainage or ditching work in Iowa. Mr. Gilligan was not satisfied with the manner in which this work was being managed and dissension arose among the directors. It was then proposed to terminate entirely Mr. Gilligan's connection with and interest in the corporation, by the corporation itself and some of the other stockholders buying the remainder of his shares of stock. This was accordingly done. Two shareholders purchased a portion of the shares and the corporation itself took the remainder at the agreed price of $4,000. This amount was evidenced by two promissory notes of the corporation for $2,000 each. One of these notes was sold by the plaintiff. This suit is brought to recover the amount due upon the other.

The defendant corporation by its answer admitted the execution and delivery of the note, and as a defense alleged that it was given without consideration and was obtained by fraud. In a cross-petition it alleged that in September, 1906, the plaintiff fraudulently induced W. H. Crook and five others (naming them) to take stock and form the corporation, representing that he had $60,000 invested in the bridge and contracting business, and that the investment was netting him 20 per cent. per annum; that, relying on these representations, the persons named became stockholders and paid in the sum of $8,000. It also avers that the property was fraudulently overvalued and the debts understated in the written statement of assets and liabilities, and denies that plaintiff had any goodwill in a number of counties in this and other states for which large amounts were charged in the inventory; that the articles of incorporation were void because not properly signed by the incorporators; that about June 20,

1907, "the plaintiff commenced fighting the business interests of defendant for the purpose of compelling defendant to buy his stock," and that, not knowing the true condition of affairs, defendant bought about one-half of his remaining stock in the corporation, Gilligan agreeing not to compete in certain counties, the other half being bought by stockholders; that the sale was void for the reason that the corporation could not purchase its own stock; that it was against public policy for the corporation and Gilligan to enter into an agreement that Gilligan would not compete against the defendant at any public bridge letting; that Gilligan was insolvent at the time the corporation was formed, and fraudulently procured the stock from the defendant at that time, and that therefore the later sale of the stock and the notes given therefor were without consideration. Ignorance of the frauds until after the notes herein sued upon had been signed and delivered is also averred; and it is claimed that there is now due defendant from plaintiff the sum of $38,201.83.

In reply the plaintiff alleges the defendant is estopped to deny its corporate capacity; pleads that the notes were executed by defendant with full knowledge of the affairs of the corporation and of the value of the stock; that the statement was honestly made from the books; and he denies specifically any attempt to defraud. The court found for the plaintiff, and defendant appeals.

In this court defendant contends that the judgment is not sustained by sufficient evidence; that it was never lawfully organized as a corporation; that all notes given by it were void for the reasons that it was incorporated by one person; that its paid-up capital stock did not exceed $6,000; and that the plaintiff was guilty of fraud in organizing the corporation and procuring the note.

The evidence is voluminous and seems to show that the business, both before and after the sale, had been loosely conducted, but we think it unnecessary to consider it in detail.

1. Section 144, ch. 16, Comp. St. 1911, provides: "No

body of men acting as a corporation under the provisions of this subdivision shall be permitted to set up the want of legal organization as a defense to any action brought against them as a corporation." In *Livingston Loan & Building Ass'n v. Drummond,* 49 Neb. 200, it was held that a defendant sued as a corporation cannot deny its existence either in abatement or in bar. If the defendant is not a corporation, it cannot appear as such and plead in that capacity. Even if the state were able to question the legal existence of the corporation upon sufficient ground, the defendant could not avail itself of the lack of legal existence and thus commit a sort of legal hara-kiri in a collateral action of this nature. 10 Cyc. 1065, 1066, 1157, 1158, and notes.

2. As to the contention that the note was procured by fraud: The evidence shows that Mr. Gilligan largely relied upon his books as showing the condition of his business affairs before the corporation was organized. The statement which was submitted to the incorporators, and which seems to have been taken from the books, so far as tangible property is concerned, placed a heavy valuation upon "good-will" in certain counties in this and other states. The purchasers were thus apprised that "good-will" in a business which was open to public competitive bidding was one of the articles which they were buying, but they seem to have made no protest as to such an intangible and visionary asset or to question the value placed thereon. Apparently they had ample opportunity to make inquiry and investigation before they purchased and no artifice was employed to hinder them. Mr. John A. Crook, a stockholder who was elected secretary in January, 1907, had been employed in the business since before 1900, and apparently was as familiar with its affairs as Gilligan himself. On March 22, 1907, when it had been definitely ascertained that an overvaluation had been made as to some items, Gilligan voluntarily surrendered to the corporation stock which was presumably agreed to be equal in value to the excess in valuation. Apparently

no further complaint was made. When friction arose between Gilligan and Crook, negotiations were entered into which resulted in the ousting of Gilligan and the transfer of his remaining stock in consideration of the execution of the two notes. At this time the corporation had been in full control of the business from September, 1906, to June, 1907. Large amounts of money had been received upon contracts and large amounts expended under the authority of the directors of the corporation. No court could have the facilities for ascertaining the true value of the assets that this corporation had during the months in which it was in control of the business; and at the time it closed the transaction with Gilligan by the purchase of his stock it was apparently in full possession of all the facts and knew the true value of the stock as well as he did. If the price that it paid was excessive, it bought it with its eyes open and obtained just what it purchased. It is not claimed that any false representations were then made.

3. The contention is made that the sale of the stock was illegal and void for the reason that a part of the consideration was an agreement on the part of Gilligan not to compete in Otoe county. It seems apparent that the desire to oust Gilligan was the principal motive for the purchase of the stock. The finding of the trial court in favor of the plaintiff on this point seems to be supported by sufficient evidence though the evidence is conflicting.

We find no reason to set aside the judgment of the district court, which is therefore

AFFIRMED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.