VIRGIL WAGNER ET AL., APPELLEES, V. CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION OF THE METROPOLITAN CLASS, ET AL., APPELLANTS, LINDLEY D. HUTCHINSON ET AL., INTERVENERS AND APPELLEES, JAMES F. GREEN, AMICUS CURIAE.

55 N. W. 2d 490

Filed November 7, 1952. No. 33156.

*Edward F. Fogarty, Edward Sklenicka, Herbert M. Fitle,* and *James M. Paxson,* for appellants.

*Seymour L. Smith, Clayton H. Shrout,* and *Theodore L. Richling,* for appellees.

*James F. Green,* Amicus Curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This action was brought in the district court for Douglas County by resident property owners in the area sought to be annexed to the city of Omaha by its ordinance No. 16950. The action seeks to have the ordinance declared invalid and to enjoin the city of Omaha, its officers, agents, and representatives, or any person or persons acting in their behalf, from enforcing it. The trial court decreed the ordinance to be null and void and granted the relief asked. The city filed a motion for new trial. This appeal was perfected from the overruling thereof.

The area sought to be annexed by ordinance No. 16950 is approximately 490 acres. It is located in Sections 21 and 22, Township 75 North, Range 44 West of the 5th P. M., in Douglas County, and is referred to as East Omaha, although it is not and never has been an

incorporated city or village. The area sought to be annexed does not include any of the area lying between the outer edge of the East Omaha Drainage District's right-of-way and the Missouri River.

The questions raised are: Is any part of the area sought to be annexed to the city by ordinance No. 16950 agricultural lands which are rural in character, is the area sought to be annexed contiguous to the city, and is the situation one in which injunctive relief should be granted?

"In 1922, the metropolitan city of Omaha adopted as its home rule charter, chapter 116, Laws of 1921, in toto, under the provisions of article XI, section 5, of the Constitution of the State of Nebraska. The original home rule charter and amendments adopted thereto pursuant to constitutional authority appear in chapter 14, Revised Statutes 1943." Reid v. City of Omaha, 150 Neb. 286, 34 N. W. 2d 375. In this opinion we will refer to the sections as the same appear in the Revised Statutes 1943.

Section 14-117, R. S. 1943, is the authority pursuant to which the city passed the ordinance. It provides, insofar as here material, as follows: "The corporate limits of any city of the metropolitan class shall be fixed and determined by the council of such city by ordinance. The city council of any metropolitan city may at any time extend the corporate limits of such city over any lands, lots, tracts, street or highway, such distance as may be deemed proper in any direction, * * *. This grant of power shall not be construed as conferring power upon the council to extend the limits of a metropolitan city over any agricultural lands which are rural in character."

Annexation of territory under this authority is a legislative matter. However, courts have the power to inquire into and determine whether the conditions exist which authorize the lands to be annexed. Campbell v. Youngson, 80 Neb. 322, 114 N. W. 415; Winkler v. City

of Hastings, 85 Neb. 212, 122 N. W. 858; Witham v. City of Lincoln, 125 Neb. 366, 250 N. W. 247.

"Constitutional and statutory limitations on the nature and extent of the territory which may be annexed to a municipal corporation must be observed." 62 C. J. S., Municipal Corporations, § 46, p. 130.

In doing so it is not for the courts to determine what portions might be properly annexed, for the fixing of boundary lines under this authority is a legislative act. State ex rel. Davis v. City of Largo, 110 Fla. 21, 149 So. 420; City of Houston v. State ex rel. City of West University Place, 142 Tex. 190, 176 S. W. 2d 928.

The home rule charter adopted by the city of Omaha is a grant as distinguished from a limitation of power. Being a grant of power the charter is to be construed according to the same rules as a legislative act containing the same provisions in determining what authority is thereby granted the city government. Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N. W. 643; Falldorf v. City of Grand Island, 138 Neb. 212, 292 N. W. 598.

"A municipal corporation is a creature of the law established for special purposes, and its corporate acts must be authorized by its charter and other acts applicable thereto. It therefore possesses no power or faculties not conferred upon it, either expressly or by fair implication, by the laws which created it or by other laws, constitutional or statutory, applicable to it.

"The power conferred upon municipal corporations by their charters to enact ordinances on specified subjects is to be construed strictly, and the exercise of the power must be confined within the general principles of the law applicable to such subjects." Reid v. City of Omaha, *supra*. See, also, Interstate Power Co. v. City of Ainsworth, 125 Neb. 419, 250 N. W. 649.

"A municipal corporation or its corporate authorities have no power to extend its boundaries otherwise than provided for by legislative enactment or constitutional

provision. Such power may be validly delegated to municipal corporations by the legislature, and when so conferred must be exercised in strict accord with the statute conferring it." 37 Am. Jur., Municipal Corporations, § 24, p. 640.

As stated in Horbach v. Butler, 135 Neb. 394, 281 N. W. 804: "In the absence of a showing that the city council acted outside of their granted powers, or of a showing that they abused the discretion lodged with them, in the exercise of a granted power, the finding of the city council is conclusive."

The burden of doing so was on appellees. As stated in 6 McQuillin, Municipal Corporations (3d ed.), § 20.08, p. 18: "The burden is on one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity. The burden of establishing a want of a rational basis for an ordinance and that it is unreasonable and arbitrary is on the one asserting the same. Likewise, the burden of proof to sustain a right to equitable relief against the enforcement of an ordinance on the ground that it is invalid rests upon the complainant; the reason is that the presumption is in favor of the validity of the ordinance."

One of the three questions raised by the appeal is, is the area sought to be annexed contiguous to the city? Appellees contend this question should be, is the area sought to be annexed sufficiently conterminous or adjoining to the city that it can extend its limits over it? The authority granted to the city by section 14-117, R. S. 1943, is: "The city council * * * may at any time extend the corporate limits of such city over any lands, lots, tracts, street or highway, such distance as may be deemed proper in any direction, * * *." It will be observed that the act contains neither the word contiguous or conterminous in relation to what lands, lots, tracts, street or highway the city may extend its boundaries to include. The city's present boundary joins the area sought to be annexed on the north and partially on the

west of the northern part. We find the area sufficiently joins the city so that it could properly extend its boundaries to include the area, provided the nature thereof is of such character that the city has the authority to do so.

In conferring this authority section 14-117, R. S. 1943, expressly provides: "This grant of power shall not be construed as conferring power upon the council to extend the limits of a metropolitan city over any agricultural lands which are rural in character."

" 'Agriculture' is the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock." 3 C. J. S., Agriculture, § 1, p. 365.

"Rural" means of or pertaining to the country as distinguished from a city or town, whereas "urban" means of or belonging to a city or town. In many of the cities and villages throughout the state there are tracts which are only partially developed as residential areas wherein substantial parts of the land are used for agricultural purposes but which tracts are, in fact, urban in character. It was clearly not the intention of the Legislature, if such an area develops outside the boundaries of a metropolitan city, to prevent such city from annexing it. It was, however, the purpose of the act to prevent annexation by such city of agricultural areas which are rural in character.

The area sought to be annexed lies just inside the outer edge of the right-of-way of the East Omaha Drainage District, on which right-of-way is located a dike or levee which runs along the entire east and south sides of the tract. This dike or levee protects the area from the flood waters of the Missouri River.

The whole area is low. Its water table is very high and is directly affected by the amount of water flowing in the Missouri River. During wet seasons, particularly if the river remains high, the surface ground remains wet and parts of the area become subject to standing water

and cannot be farmed. Ordinarily, however, the area, with some exceptions, is dry and subject to being used by the occupants thereof for whatever purposes they find to be desirable, such as gardening, livestock raising, livestock feeding, farming, etc.

In this area, which contains approximately 490 acres, are some 588 dwellings occupied by an estimated 2,116 people. It also contains a limited retail area in the vicinity of Twenty-third and Locust Streets and also several industries, none of which are very large.

Without setting out the evidence in detail, which the voluminous record makes impractical, we find that a large part of the area sought to be annexed has been platted into blocks and lots. Of this platted area a considerable part is strictly residential and the balance thereof is agricultural land which is urban in character; that is, it is sufficiently occupied by dwellings that it has lost its rural character. There are, however, two unplatted tracts in the area containing somewhere between 90 and 103 acres which are agricultural lands and rural in character.

There was an attempt made to show that the larger of these two tracts is a swamp and not agricultural land. While this tract could not be entirely used for agricultural purposes in 1951, that being an exceptionally wet year, we think the evidence shows that while this tract is somewhat lower than the other lands it is ordinarily available for agricultural purposes.

In the northwest part of the area, just north and south of Locust Street, are two other tracts which are not occupied by residences. The size of these two tracts is not shown. The area north of Locust Street is the larger. It appears to be low and often partly covered with water. It has in some years been used for agricultural purposes. However, it is owned by the city and is intended for park purposes. Its possible use for agricultural purposes is not here material. The smaller area, which is just south of Locust Street, is a swamp

area and cannot be said to be usable for agriculture.

We have come to the conclusion that somewhere between 90 and 103 acres of the area sought to be annexed is unplatted agricultural lands which are rural in character and over which the city did not have authority to extend its boundary.

"It is not for the Court to determine what portions might be properly annexed, for the drawing of boundary lines is a legislative act." State ex rel. Davis v. City of Largo, *supra*. See, also, City of Houston v. State ex rel. City of West University Place, *supra*.

In view of the foregoing we have come to the conclusion that the city, by including these agricultural lands which are rural in character in the area sought to be annexed, exceeded the authority granted it by section 14-117, R. S. 1943. Since we have no authority to revise the boundary line of the city, as extended by the ordinance, we find that its doing so makes the entire ordinance invalid.

Are the appellees entitled to injunctive relief?

Several of the appellees either own or have interests in different tracts located in the unplatted agricultural lands which are rural in character. They are proper parties to maintain this action.

Under the situation here the following is applicable: "Where an attempted annexation of territory to a municipal corporation is illegal, injunction is a proper remedy, and resort to a court of equity is proper either to prevent consummation of the annexation or, if it has been completed, to have the proceedings declared null and void and the corporate authorities restrained from exercising jurisdiction over the territory in question by virtue of the illegal proceedings. A suit to obtain such relief is a direct and not a collateral attack on the annexation proceedings, and may be entertained on suit of a municipality sought to be annexed to another municipality, or at the instance of the voters or property owners in the territory sought to be annexed." 62 C.

J. S., Municipal Corporations, § 65, p. 175. See, also, Best & Co., Inc. v. City of Omaha, 149 Neb. 868, 33 N. W. 2d 150.

Having come to the conclusion that the city, by including some 90 to 103 acres of unplatted agricultural lands which are rural in character in the area sought to be annexed by ordinance No. 16950, exceeded the authority granted it by. section 14-117, R. S. 1943, we affirm the action of the trial court.

AFFIRMED.