ERNEST BIERSCHENK ET AL., APPELLANTS, V. CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION OF THE METROPOLITAN CLASS, ET AL., APPELLEES.

135 N. W. 2d 12

Filed May 7, 1965. No. 35814.

Shrout, Hanley, Nestle & Corrigan, for appellants.

Herbert M. Fitle, Frederick A. Brown, Edward M. Stein, Sebastian J. Todero, Walter J. Matejka, and James E. Fellows, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BROWER, J.

The appellants, Ernest Bierschenk and 11 other resident landowners and taxpayers in the area affected, as plaintiffs, brought this action on behalf of themselves and those similarly situated. Its purpose was to enjoin the City of Omaha, Nebraska, a municipal corporation, hereinafter referred to as the city, its mayor, council, and other officers who were joined with it as defendants and who are appellees in this court, from enforcing ordinance No. 22649 of said city by which a large portion of an area known as Keystone and Benson Gardens was annexed to the city.

On appropriate pleadings to raise the issues hereinafter discussed, a trial was held in the district court for Douglas County, Nebraska. The trial court found in favor of the defendants that the annexation was valid and dismissed the plaintiffs' petition. The plaintiffs have appealed to this court from an order overruling their motion for a new trial.

Plaintiffs first contend that the area involved included

agricultural land rural in nature and that the trial court erred in holding to the contrary which they urge requires a reversal of the judgment. The statute governing the annexation of territory by a city of the metropolitan class is section 14-117, R. R. S. 1943, the pertinent portion of which reads: "The corporate limits of any city of the metropolitan class shall be fixed and determined by the council of such city by ordinance. The city council of any metropolitan city may at any time extend the corporate limits of such city over any lands, lots, tracts, street or highway, such distance as may be deemed proper in any direction * * *; Provided, that any other laws and limitations defining the boundaries of cities or villages or the increase of area or extension of limits thereof, shall not apply to lots, lands, cities or villages annexed, consolidated or merged under this section. This grant of power shall not be construed as conferring power upon the council to extend the limits of a metropolitan city over any agricultural lands which are rural in character." In the case of Wagner v. City of Omaha, 156 Neb. 163, 55 N. W. 2d 490, this court considered this section and held: "Annexation of territory by a metropolitan city pursuant to section 14-117, R. S. 1943, is a legislative matter. However, courts have the power to inquire into and determine whether the conditions exist which authorize the annexation thereof.

"In doing so it is not for the courts to determine what portions may be properly annexed, for the fixing of boundary lines under this authority is a legislative act.

"Constitutional and statutory limitations on the nature and extent of the territory which may be annexed to a municipal corporation must be observed. * * *

"A municipal corporation or its corporate authorities have no power to extend its boundaries otherwise than provided for by legislative enactment or constitutional provision. Such power may be validly delegated to municipal corporations by the legislature and when so con-

ferred must be exercised in strict accord with the statute conferring it.

"The burden is on one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity."

From the testimony it appears that the area annexed by the ordinance included 727 acres of which 118 acres were in streets and roads; 26 acres were occupied by parks, schools, churches, and public grounds; 28 acres were industrial; and 3 acres were commercial. There were 1,218 residences built on an area of 446 acres. The remaining portion was in scattered lots which had no buildings upon them. The whole area had been platted with the exception of one tract of 5 acres zoned commercially with a filling station thereon. Much of it thereafter had been replatted or subdivided, often repeatedly. The lots in the various plats and subdivisions varied greatly in size. Those to the northern part of the annexed area were generally smaller and a greater percentage of these had residences upon them. Midway from north to south was that called the Keystone Addition where the lots were much larger. The area of these varied from about 1 acre to as much as 6 acres. Some of the owners had sold off portions of the larger lots. Near Blondo Street on the south, the lots were again smaller although often larger than those on the north end. The greater portion of the commercial and industrial zoned lots were on the south near Blondo Street. The area was supplied with water by the Metropolitan Utilities District, a separate entity. Electric, gas, and sewer lines having connections with those in the city ran through the district. Certain streets were extensions of those in the city. Most of the streets and utilities had been planned and zoned in conformity with the ordinances of the city pursuant to its power to make regulations applying to lands within 3 miles of the corporate limits. Considerable growth, particularly residential in nature, was shown in the area.

Several witnesses for the plaintiffs testified concerning the use of premises claimed by them to be agricultural lands rural in nature. There was evidence concerning flower and vegetable gardens, orchards, vineyards, and pastures maintained by residents on lots in the area itself and adjoining it. Pictures of ponies kept for the children and riding horses pastured in enclosures were introduced. One resident had fed two or three steers at times on his premises although they were pastured elsewhere the year before he testified. Another raised hogs on his lots. Some corn was raised for feed although most of it was sweet corn. Certain persons had 5 acres in corn or produce but, generally speaking, this consisted of the sum of several small tracts added together and often portions lay outside the annexed area. Most of the vegetables and fruit raised and cattle and hogs fed were consumed by the producer or his family. Produce not consumed was generally given away to relatives or friends. Little was sold and the sums received for it were always quite small and when related to the owner's other income was trifling. Many witnesses who were retired had been engaged in commercial enterprises within the city. Widows testified their husbands had been so employed in their lifetime. The witnesses not retired were generally engaged in commercial pursuits in the city. No one appears to have depended upon agriculture for his or her living. Several witnesses testified that they purchased their holdings because they liked spacious living. Photographs of some premises claimed to be used agriculturally have spacious grounds and beautiful wooded areas. The buildings adapted for livestock were practically all small, old, and dilapidated. None showed corncribs, granaries, or other modern agricultural facilities.

This court in Wagner v. City of Omaha, *supra*, affirmed the judgment of the trial court which had adjudged the annexation ordinance to be void. The cases are clearly distinguishable. In the cited case there were two tracts

containing between 90 and 103 acres of unplatted agricultural lands out of 490 sought to be annexed. The court in its opinion in that case stated: " 'Rural' means of or pertaining to the country as distinguished from a city or town, whereas 'urban' means of or belonging to a city or town. In many of the cities and villages throughout the state there are tracts which are only partially developed as residential areas wherein substantial parts of the land are used for agricultural purposes but which tracts are, in fact, urban in character. It was clearly not the intention of the Legislature, if such an area develops outside the boundaries of a metropolitan city, to prevent such city from annexing it. It was, however, the purpose of the act to prevent annexation by such city of agricultural areas which are rural in character." From the evidence it appears that although a part of the area may be used agriculturally, it is certainly not rural in nature. The plaintiffs' contention that the trial court erred in not holding the annexed area included agricultural lands rural in nature is without merit.

Plaintiffs next contend the trial court erred in finding the land annexed was sufficiently connected to or contiguous with the city limits to permit its annexation. They place great emphasis on the irregularity of the boundaries of the area and the narrow neck with which the greater portion of it is connected to the city. There are 132 different calls of metes and bounds in the description. As viewed on the plats in evidence the outline of the border is indeed grotesque. From Blondo Street on the south where it joins the city limits to Fort Street on its north is practically 2 miles. On the south it is about 800 feet wide east and west. Further north its breadth narrows to 460 feet, again widens, and some distance further north it is a neck of only 252 feet. Still further north it is 2,950 feet wide. Testimony on behalf of the city in explanation of the odd shape of the area to be annexed indicates that the growth of the city in many instances extended on ridges and spurs.

There is testimony concerning the plats introduced in evidence and the plats themselves which show that the narrow necks in portions of the annexed area were along a street of some importance which connected the city to the more thickly populated area to the north and that along this street even at its narrowest point were houses.

In Wagner v. City of Omaha, *supra,* the question presently before us was discussed as follows: "Appellees contend this question should be, is the area sought to be annexed sufficiently conterminous or adjoining to the city that it can extend its limits over it? The authority granted to the city by section 14-117, R. S. 1943, is: 'The city council * * * may at any time extend the corporate limits of such city over any lands, lots, tracts, streets or highway, such distance as may be deemed proper in any direction, * * *.' It will be observed that the act contains neither the word contiguous or conterminous in relation to what lands, lots, tracts, street or highway the city may extend its boundaries to include. The city's present boundary joins the area sought to be annexed on the north and partially on the west of the northern part. We find the area sufficiently joins the city so that it could properly extend its boundaries to include the area, provided the nature thereof is of such character that the city has the authority to do so." Plaintiffs cite Village of Niobrara v. Tichy, 158 Neb. 517, 63 N. W. 2d 867, where this court reversed the judgment of the trial court permitting annexation because the area was not contiguous to the city. There no proof of any contiguity of boundary at all was shown and, moreover, the court was construing section 17-407, R. R. S. 1943, applicable to cities of the second class and villages where the statute expressly requires contiguity. The cited case has no application to the one before us.

The plaintiffs cite cases from other jurisdictions which we have noted and need not discuss because of the difference either in the factual situation or the statute

which they construe. The defendants, on the other hand, call our attention to 2 McQuillin, Municipal Corporations (3d Ed.), § 7.20, p. 312, where examples are set out of annexation cases approved by other courts where the area annexed is joined to the city by a very narrow strip. These cases also need not be considered. It is only necessary to determine that under section 14-117, R. R. S. 1943, a city of the metropolitan class may annex an area by extending its boundaries to form a common one with the portion annexed if the area so attached is urban in nature and is connected to the city by a substantial link of narrower land of the same character.

The plaintiffs contend that the court erred in permitting the annexation because the boundaries of the parcel involved are so irregular as to prevent the city from providing adequate services to the area involved. It is pointed out that there are so many corners and turns that it is possible for one going in a straight line to enter, leave, reenter, and again leave the premises involved in a very short distance. Plaintiffs argue the city fire or police departments would experience great difficulty in answering calls from any location along these borders in ascertaining whether the call comes from areas in their jurisdiction and whether the call should be answered by them or departments from outlying areas in the county.

The city concedes that there might arise problems growing out of the annexation of the territory involved. However, the statute governing the annexation of such territory does not require that the boundaries of the area should be regular or enclosed by straight lines. It is shown that the city does not tend to grow in straight lines and that other portions of the boundary along the city limits are irregular and involve problems in servicing other areas because thereof. There was evidence on behalf of the city by officials of the fire and police departments, together with one charged with the respon-

sibility of providing street service and garbage collection, that they had laid plans to serve the area sought to be annexed and were preparing to do so when enjoined at the commencement of the action. In all instances of annexation it is to be assumed some such difficulties will arise. We do not think that there is merit in this last objection of the plaintiffs.

It follows that the annexation is valid and that the judgment of the trial court was right and should be and is affirmed.

AFFIRMED.