Mr. Robert Bruce Snow County Attorney Hernando County 112 North Orange Avenue Post Office Box 2060 Brooksville, Florida 33512
Dear Mr. Snow:
This is in response to your request for an opinion on substantially the following questions:
 1. WHO IS AUTHORIZED TO TRANSPORT BAKER ACT PATIENTS TO THE INITIAL RECEIVING FACILITY?
 2. IF A COUNTY FACILITY CANNOT HOUSE PATIENTS FOR A 72 HOUR PERIOD, IS SUCH FACILITY QUALIFIED TO BE A RECEIVING FACILITY?
 3. WHO IS AUTHORIZED TO TRANSPORT BAKER ACT PATIENTS TO AN ALTERNATE RECEIVING FACILITY?
 4. WHAT IS THE DEFINITION OF A "SMALL RURAL COUNTY" CONTAINED IN s. 394.459(11), F.S. (1984 SUPP.)?
 5. WHAT LIABILITY DOES THE HERNANDO COUNTY SHERIFF'S OFFICE HAVE IN TRANSPORTING BAKER ACT PATIENTS?
According to your letter, the Hernando County Guidance Center has been designated by the Department of Health and Rehabilitative Services as a "receiving facility." The Guidance Center, however, does not have sufficient facilities to house patients in need of overnight accommodations for the 72 hour period permitted by Part I, Ch. 394, F.S., the Florida Mental Health Act or Baker Act. Consequently, you state that several questions have arisen regarding the transportation of patients.
QUESTION ONE
Section 394.455(8), F.S. (1984 Supp.), provides that a "receiving facility" as used in Part I of Ch. 394, means a facility designated by the Department of Health and Rehabilitative Services "to receive patients under emergency conditions or for psychiatric evaluation and to provide short-term treatment, and also means a private facility when rendering services to a private patient pursuant to the provisions of this act." County jails, however, are expressly excluded from the definition. Section 394.463(1), F.S. (1984 Supp.), in setting forth the criteria for involuntary examination, provides that a person may be taken to a receiving facility for involuntary examination if there is reason to believe that the person is mentally ill (see definition at s. 394.455[3] and the other criteria enumerated therein are met. Section394.463(2), F.S. (1984 Supp.), sets forth the means whereby an involuntary examination may be initiated. A court may initiate an involuntary examination by entering an ex parte order stating that the person appears to meet the criteria for involuntary examination. Section 394.463(2)(a)1. In such instance, if other less restrictive means are not available such as voluntary appearance for outpatient evaluation, a law enforcement officer, or other designated agent of the court, shall take the person into custody and deliver him to the nearest receiving facility for involuntary examination. An involuntary examination may be initiated by a law enforcement officer by taking a person who appears to meet the criteria for involuntary examination into custody and delivering him or having him delivered to the nearest facility for examination. Section 394.463(2)(a)2. Finally, an involuntary examination may be initiated by a physician, psychologist licensed pursuant to Ch. 490, psychiatric nurse or clinical social worker who may execute a certificate that he has examined the person within the preceding 48 hours and finds that the person appears to meet the criteria for involuntary examination. If other less restrictive means, such as voluntary appearance for outpatient evaluation are not available, a law enforcement officer shall take the person named in the certificate into custody and deliver him to the nearest available receiving facility. Section 394.463(2)(a)3. Subsection (2)(b) of s. 394.463
deals expressly with the question of transportation for involuntary examination at a receiving facility. Paragraph (b) states:
 Transportation for involuntary examination. — Each county shall designate a single law enforcement agency within the county, or portions thereof, which shall take a person into custody upon the entry of an ex parte order or the execution of a certificate by an authorized professional and which shall transport that person to the nearest receiving facility for examination. The law enforcement agency designated for the area in which the person in need of transport for involuntary examination is situated may thereafter decline to transport the person to a receiving facility only if:
 1. The jurisdiction designated by the county has contracted on an annual basis with an emergency medical transport service for transportation of persons to receiving facilities pursuant to this section at the sole cost of the county; and
 2. The law enforcement agency and transport service agree that the continued presence of law enforcement personnel is not necessary for the safety of the person or others.
These provisions of subsection (2)(b) appear to clearly supply the answer to your first question. See also, AGO 74-108. Cf., s.394.461(4)(e), F.S. (1984 Supp.). Where the Legislature has clearly and plainly expressed its intent, no resort to rules of statutory construction is necessary. Ross v. Gore, 48 So.2d 412
(Fla. 1950); Clark v. Kreidt, 199 So. 333 (Fla. 1940); Fine v. Moran, 77 So. 533 (Fla. 1917). Thus, the law enforcement agency designated by the county is the only agency authorized to transport persons to the receiving facility in the absence of an agreement with an emergency medical transport service to perform this transportation, or pursuant to court order, other designated agent of the court. See also, AGO 74-108. Contrast, s.394.459(11), F.S. (1984 Supp.), relating to the transportation of patients to treatment facilities.
Your first question is answered accordingly.
QUESTION TWO
You secondly ask whether a county facility which cannot house patients for a 72 hour period is qualified to be designated a receiving facility. As set forth above, Part I of Ch. 394, F.S., defines a "receiving facility," in pertinent part, as a facility designated by the Department of Health and Rehabilitative Services "to receive patients under emergency conditions or for psychiatric evaluation and to provide short-term treatment. . . ." Section394.455(8), F.S. Section 394.461(1) F.S. (1984 Supp.), authorizes the department to "designate any community facility as a receiving facility to provide examination and emergency, short-term treatment." That provision goes on to authorize the governing board of any county "to contract with the department to set aside an area of any facility of the department to function, and be designated, as the receiving facility." See also, s. 394.457(9), F.S., (1984 Supp.), authorizing the department to approve private psychiatric facilities to provide examination and treatment on an involuntary basis and to act in the same capacity as receiving and treatment facilities.
The statutes do not set forth specific criteria for a county facility to be designated as a receiving facility. I assume your reference in your letter of inquiry to a 72 hour period of time is the reference in s. 394.463(2)(c), F.S. (1984 Supp.), providing that "a patient may be detained at a receiving facility for involuntary examination no longer than 72 hours." This provision, however, does not specify that such receiving facility must be capable of housing a patient for up to this 72 hour period of time. The Department of Health and Rehabilitative Services is designated the "Mental Health Authority" of Florida and is charged with the "executive and administrative supervision over all mental health facilities, programs, and services." Section 394.457(1), F.S. (1984 Supp.). The department is vested with the responsibility "for the planning, evaluation, and coordination of a complete and comprehensive statewide program of mental health including community services, receiving and treatment facilities. . . ." Id. at (2). The department shall adopt rules necessary for the administration of Part I of Ch. 394, F.S. Id. at (5). Administrative rules of the department do not require receiving facilities to have the capability of housing patients for up to a 72 hour period of time. See, e.g., 10E-5.25, F.A.C. You state in your letter that the department has already designated the Guidance Center as a receiving facility in Hernando County. Thus, while the statute specifies that a patient may not be detained at a receiving facility for longer than 72 hours, the capability to house such patient for this period of time does not appear to be a statutorily imposed criteria for eligibility as a designated receiving facility. Furthermore, since the Department of Health and Rehabilitative Services, the agency delegated the statutory authority to make such designation, has already designated the Guidance Center as the "receiving facility" for Hernando County, this action must be given a presumption of validity. Daniel v. Florida State Turnpike Authority,213 So.2d 585 (Fla. 1968); Miller v. Brewer Company of Florida, Inc.,122 So.2d 565 (Fla. 1960); Heftler Construction Co. and Subsidiaries v. Department of Revenue, 334 So.2d 129 (3 D.C.A.Fla., 1976).
QUESTION THREE
Since the Hernando County Guidance Center does not have sufficient facilities to house patients in need of overnight accommodations for the 72 hour period of time permitted by the act, and consequently, some patients must be transported outside the county to an alternate receiving facility for precommitment evaluation and treatment, you therefore ask who is authorized to transport such patients to the alternate receiving facility.
Provisions of the Florida Statutes do not address the circumstances described in your letter of inquiry. That is, there is no statute which directs which public agency has responsibility for transportation of individuals to another receiving facility when the initial facility does not have adequate facilities to perform its duties and responsibilities for precommitment evaluation and treatment. If the individual is being transported to the so-called "alternate receiving facility" pursuant to the provisions of s. 394.463, F.S. (1984 Supp.), for involuntary examination, then, in my opinion, the transportation provisions of that statute would remain applicable. This conclusion is based upon the provisions of s. 394.463 which require the county designated law enforcement agency to perform transportation services for persons who come within the statutory criteria for involuntary examination; the designated law enforcement agency would have a continuing responsibility to perform such transportation services in the absence of the conditions specified in subsection (2)(b) of that statute being present.
QUESTION FOUR
You also question what the definition of "small rural county" is under Ch. 394, F.S., and whether Hernando County is such a small rural county. I assume for purposes of this opinion that you are referring to the use of this term in s. 394.459(11), F.S. (1984 Supp.), relating to the transportation of patients to treatment facilities which provides in pertinent part: "County law enforcement and correctional personnel and equipment and municipal law enforcement and correctional personnel and equipment shall not be used to transport patients adjudicated mentally incompetent or found by the court to meet the criteria for involuntary placement pursuant to s. 394.467(1), except in small rural counties where there are no cost-efficient alternatives." (e.s.) Contrast, s.394.463(2)(b) relating to the transportation of patients to receiving facilities, and respectively defining "receiving facility" and "treatment facility." Cf., AGO 85-39. Part I of Ch. 394 does not define "rural county." In the absence of such a statutory definition such words are construed in their plain and ordinary sense.
Milazzo v. State, 377 So.2d 1161 (Fla. 1979); State v. Cormier,375 So.2d 852 (Fla. 1979). The word "rural" is generally defined to mean of or pertaining to the county, as distinguished from a city or town; belonging to or characteristic of the county. See, e.g., Wagner v. City of Omaha, 55 N.W.2d 490, 494 (Neb. 1952); Philadelphia, B. W.R. Co. v. Mayor and Council of Wilmington,57 A.2d 759, 769 (Del.Ch. 1948). Cf., s. 425.03(1), F.S., defining "rural area" to mean "any area not included within the boundaries of any incorporated or unincorporated city, town, village, or borough having a population in excess of 2,500 persons."
Thus, it would appear within the context of s. 394.459, F.S. (1984 Supp.), that the Legislature intended by the use of the term "small rural county" to mean a county that is predominately rural in character with a small population such that the use or employment of non-law enforcement personnel for transportation of patients under the act to treatment facilities is not cost efficient. However, the question of whether Hernando County is a "small rural county" presents a mixed question of law and fact which this office cannot decide. If the governing board of the county applying the above-referenced definition and legislative intent of the statute makes a determination that the county is a "small rural county" and that there are no cost-efficient alternatives for the transportation of patients to a treatment facility, then, and only then, may the county use county law enforcement and correctional personnel and equipment for such transportation purposes.
QUESTION FIVE
The question of the liability of the Sheriff's Office incurred in the transportation of patients under Part I of Ch. 394, F.S., as amended, is answered by the application of rules of governmental immunity to the facts as presented in any particular circumstance. The State of Florida, by the enactment of s. 768.28, F.S., has waived its sovereign immunity for liability for torts on the part of the state and its agencies or subdivisions to the extent specified therein. This waiver includes the office of the Sheriff. See, Beard v. Hambrick, 396 So.2d 708 (Fla. 1981) (s. 768.28 is applicable to sheriffs as a separate entity or agency of a political subdivision). Subsection (5) of s. 768.28 provides that the state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances. See generally, AGO's 81-57, 78-42, 75-114. And see, Everton v. Willard, 468 So.2d 936
(Fla. 1985), reaffirming the rule set forth in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), which provides absolute immunity for governmental decisions which are basic discretionary, judgmental decisions that are inherent in enforcing the laws of the state. Thus, under the Supreme Court's test, liability could be imposed for a negligent act occurring in the execution of ministerial acts of the law enforcement agency.
Thus, in my opinion, the Sheriff's Office may be liable for any tortious actions committed in the transportation of a patient pursuant to Part I of Ch. 394, in the same manner as would be a private agency under like factual circumstances, subject to the limitations specified in s. 768.28, F.S., and Commercial Carrier Corp. v. Indian River County, supra.
In summary, it is therefore my opinion that the law enforcement agency designated by the county is the only agency authorized to transport persons to the receiving facility in the absence of an agreement with an emergency medical transport service to perform this transportation or pursuant to a court order. The statutes do not require a county facility to have the capability to house patients for 72 hours in order to be qualified to be designated by the Department of Health and Rehabilitative Services as a receiving facility. Where a person is being transported to a so-called "alternate receiving facility" pursuant to the provisions of s. 394.463, F.S. (1984 Supp.), for an involuntary examination, the transportation provisions of that statute remain applicable. Unless and until legislatively or judicially determined otherwise, a "small rural county" for purposes of s.394.459, F.S. (1984 Supp.), means a county that is predominately rural in character with a small population such that the use or employment of non-law enforcement personnel for transportation of patients under the act to treatment facilities is not cost efficient. The Sheriff's Office is liable for negligent ministerial acts committed in the transportation of patients under Part I of Ch. 394, F.S., as amended.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General