Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/20/2021 09:14 AM CDT

County of Sarpy, a body corporate and politic,
appellee, v. City of Gretna, a Nebraska
municipal corporation, appellant.

___ N.W.2d ___

Filed May 28, 2021.    No. S-20-330.

1. **Summary Judgment: Appeal and Error.** In reviewing a summary
judgment, an appellate court views the evidence in the light most
favorable to the party against whom the judgment is granted and
gives the party the benefit of all reasonable inferences deducible from
the evidence.
2. **Annexation: Ordinances: Equity.** An action to determine the validity
of an annexation ordinance and enjoin its enforcement sounds in equity.
3. **Equity: Appeal and Error.** On appeal from an equity action, an appel-
late court decides factual questions de novo on the record and, as to
questions of both fact and law, is obligated to reach a conclusion inde-
pendent of the trial court's determination.
4. **Annexation: Agriculture.** The issue of whether annexed territory is
agricultural land that is rural in character is a question of law.
5. **Summary Judgment: Expert Witnesses: Testimony.** A conflict of
expert testimony regarding an issue of fact establishes a genuine issue
of material fact which precludes summary judgment.
6. **Expert Witnesses.** Two experts coming to different legal conclusions on
the same issue does not create a material issue of fact.
7. **Municipal Corporations: Annexation: Agriculture.** Neb. Rev. Stat.
§ 17-407(2) (Cum. Supp. 2020) does not prohibit annexation of all
agricultural lands, but only those agricultural lands which are rural in
character. Lands may be currently utilized in an agricultural fashion and
still not be rural in character.
8. **Annexation: Words and Phrases.** The word "rural" is defined as of or
pertaining to the country as distinguished from a city or town, and the
word "urban" is defined as of or belonging to a city or town.

9. **Ordinances: Proof.** The burden is on the one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity.

10. **Municipal Corporations: Annexation.** To determine whether lands are urban or suburban, or rural, the test is whether a city has arbitrarily and irrationally used the power granted therein to include lands entirely disconnected, agricultural in character, and bearing no rational relation to the legitimate purposes of annexation.

11. **Annexation: Agriculture.** The use of land for agricultural purposes does not necessarily mean it is rural in character. It is the nature of its location as well as its use which determine whether it is rural or urban in character.

12. **Municipal Corporations: Annexation.** The annexation of land by a city is a legislative matter. However, courts have the power to inquire into and determine whether the conditions exist which authorize the annexation thereof.

13. **Annexation.** It is not for the courts to determine what portions of land may be properly annexed, because the fixing of boundary lines under this authority is a legislative act.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Reversed.

Jeff C. Miller, Duncan A. Young, and Keith I. Kosaki, of Young & White Law Offices, for appellant.

Kayla N. Hathcote and Gage R. Cobb, Deputy Sarpy County Attorneys, and Stephen Hueber, Senior Certified Law Student, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

FUNKE, J.

This is an action filed by the County of Sarpy, Nebraska, to determine the validity of two annexation ordinances and a zoning extension ordinance adopted by the City of Gretna, Nebraska. The district court granted Sarpy County's motion for summary judgment, denied Gretna's motion for summary

judgment, and declared the ordinances invalid. Gretna appeals, arguing that the ordinances are valid, because Gretna did not annex agricultural lands that are rural in character. We find Gretna's argument to have merit. Therefore, we reverse the order of the district court and declare the ordinances to be valid.

## BACKGROUND

Gretna is a city of the second class under Neb. Rev. Stat. § 17-101 (Cum. Supp. 2020), located entirely within Sarpy County, in southeastern Nebraska. On November 21, 2017, the Gretna City Council adopted ordinances Nos. 2003 and 2004, which together annexed 2,953 acres contiguous or adjacent to the municipal boundaries. On the same date, the Gretna City Council adopted ordinance No. 2005, which extended Gretna's extraterritorial zoning jurisdiction as a result of the annexations.

Ordinance No. 2003 annexed contiguous territory to the east and south of Gretna's existing corporate limits. This territory included undeveloped parcels; tax lots; Sanitary and Improvement District (SID) No. 258 of Sarpy County; four developed residential subdivisions consisting of Covington, Forest Run, Lyman Highlands, and Green Acres Estates; and three single-lot subdivisions of Pumpkin Hollow, Mintken's Addition, and Lot 2 Fenton Addition Replat 2. Ordinance No. 2003 also included Vala's Pumpkin Patch (Vala's) and adjacent parcels south of Interstate 80 (I-80).

Ordinance No. 2004 annexed territory located further east, including some undeveloped parcels; tax lots; and SID Nos. 48, 176, 202, 250, 251, and 282 of Sarpy County. Ordinance No. 2004 also annexed residential subdivisions and commercial and industrial developments located further east, consisting of Country Estates; Harder Subdivision Replat 1; M&M Acres; The Hill; Wicks Southpointe; Lake Ridge Estates; Murray Sapp; Murray Sapp Replat 1; 370 Storage; SWN Investments

Nos. 2 through 7; Zapata; Meadowlark Subdivision; B-4 Corners Nos. 1, 4, 5, 7, 9, 11, and 12; Sapp Brothers Replat; Lakeview South; and Lakeview South Nos. 3 through 7. In addition, ordinance No. 2004 annexed five subdivisions to the west and south of Gretna's corporate limits, consisting of Lincoln Place, Truelson Subdivision, Valley View Estates, Standing Stone, and Willow Park.

Prior to Gretna's adoption of the ordinances, on September 12, 2017, the board of commissioners for Sarpy County adopted Sarpy County's comprehensive plan "for the build-out of Sarpy County." The plan stated that Sarpy County is the fastest growing county in the State of Nebraska with the third largest population, behind only Douglas County and Lancaster County, and that by 2040, Sarpy County's population was projected to increase by 75 percent.

On September 28, 2017, Gretna issued an annexation study and plan for furnishing municipal services. The study noted substantial economic development and growth within the city and surrounding areas. According to the study, the territory annexed under Gretna's plan "is either in close proximity to the current corporate limits or in the middle of the City of Gretna's future growth area." Both ordinance No. 2003 and ordinance No. 2004 contained an I-80 gateway and community entrance to the city. Ordinance No. 2003 contained a planned I-80 interchange between South 186th and South 192d Streets. Ordinance No. 2004 contained the Highway 370 corridor, which was the eastern entrance for the city and connected to I-80. Gretna designated both community entrances as special character areas in its 2017 comprehensive plan update. Under Gretna's plan, the I-80 interchange in ordinance No. 2003 will initiate the development of the South 192d Street corridor to the north and lead to development east and west on the Highway 370 corridor. Gretna found that annexing these areas will promote growth, increase the city's population and tax base, and preserve the city's future growth areas.

On December 14, 2017, Sarpy County brought this action in the district court for Sarpy County, seeking to enjoin the ordinances adopted by Gretna and have them declared invalid. Sarpy County contended that because the annexed area includes 22 parcels with agricultural land that is rural in character, Gretna exceeded its annexation authority under Neb. Rev. Stat. § 17-407(2) (Cum. Supp. 2020) when it adopted ordinances Nos. 2003 and 2004. Section 17-407(2) authorizes a city of the second class to annex contiguous or adjacent lands which are "urban or suburban in character" and prohibits the annexation of "agricultural lands which are rural in character." Sarpy County claimed that the specified 22 parcels were almost exclusively unplatted, with rural roads and no sewer connection. Sarpy County claimed that because ordinances Nos. 2003 and 2004 were invalid, Gretna's extension of extraterritorial zoning jurisdiction via ordinance No. 2005 was invalid.

Gretna filed an answer which denied the allegations and asserted that the ordinances and annexations were lawful, valid, and in compliance with § 17-407 and all other applicable statutes and laws. Sarpy County filed an amended complaint, and Gretna filed an amended answer. Thereafter, each party moved for summary judgment. The issue before the court was whether, under § 17-407(2), any of the contested 22 parcels qualified as agricultural lands which are rural in character.

Each party submitted an annotated statement of undisputed facts. The record established that ordinance No. 2003 contained contested parcels 1 through 11 and 19 through 22, which represented approximately 655 of the 1,075 acres annexed under ordinance No. 2003. Vala's, consisting of six parcels and approximately 400 acres, was included within the challenged parcels in ordinance No. 2003. Parcels 12 through 18 are located within ordinance No. 2004 and represented approximately 373 of the 1,878 acres annexed under ordinance No. 2004.



EXHIBIT 16-A

For purposes of summary judgment disposition, the parties agreed that all of the contested parcels contain undeveloped land used for agricultural purposes and that all of the contested parcels were accessed by unimproved roads and lacked connections to municipal water and sewer services. Gretna has planned for future street, interchange, and highway improvements for the contested areas and has planned to provide water, sewer, and utilities services to the contested areas. However, the timeframe for these plans will depend on future development.

All of the contested parcels were located in the Gretna school district, which had grown in student population by approximately 8 percent annually over the previous 11 years. A seventh elementary school was projected to open in the fall of 2021 on the northeast corner of South 192d Street and Schram Road, which abutted contested parcel 2 in exhibit 16-A, shown above. Gretna submitted an affidavit from a certified planner,

who stated that the school district's growth in population, student enrollment, and school buildings demonstrated that families with children greatly desired the area and have moved into the school district in large numbers.

Gretna submitted an affidavit from Trenton J. Rengo, a licensed appraiser, who stated that the highest and best use of the contested parcels was for either residential acreages or future subdivision development. According to Rengo, the fair market value of the contested parcels, when used for future development or residential acreages, was between $20,000 and $40,000 per acre, as compared to an agricultural use value of approximately $10,500 per acre.

All of the contested parcels were designated with "greenbelt" special valuation status for property tax purposes under Neb. Rev. Stat. §§ 77-201(3), 77-1343, and 77-1344 (Reissue 2018 & Cum. Supp. 2020), for agricultural land and horticultural land actively devoted to agricultural or horticultural purposes which has value for purposes other than agricultural or horticultural uses.

On April 16, 2020, the district court issued its order granting Sarpy County's motion for summary judgment and denying Gretna's motion for summary judgment. The court accepted Sarpy County's arguments that the contested parcels qualified as agricultural land that is rural in character, because the parcels were undeveloped and were being used for agricultural purposes, the parcels would not be connected to municipal services until development occurred, and the parcels received greenbelt tax assessment status. The court found that none of the contested parcels were currently being developed and that while Gretna had substantially grown in recent years, the growth had not trended in the general direction of the areas which Gretna sought to annex. Lastly, because Gretna sought to annex several SID's, the court found that approval of annexation would stifle development of the area. Accordingly, the court invalidated ordinances Nos. 2003, 2004, and 2005.

Gretna appeals. We granted bypass at the parties' request.

## ASSIGNMENTS OF ERROR

Gretna assigns that the district court erred in (1) finding that the contested parcels qualified as agricultural land that is rural in character, (2) granting Sarpy County's motion for summary judgment and invalidating the annexation ordinances and zoning extension ordinance, and (3) failing to grant Gretna's motion for summary judgment and uphold the validity of the ordinances.

## STANDARD OF REVIEW

[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives the party the benefit of all reasonable inferences deducible from the evidence.[1]

[2-4] An action to determine the validity of an annexation ordinance and enjoin its enforcement sounds in equity.[2] On appeal from an equity action, an appellate court decides factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the trial court's determination.[3] The issue of whether annexed territory is agricultural land that is rural in character is a question of law.[4]

## ANALYSIS

[5,6] In the form of competing motions for summary judgment, the issue presented to the district court was whether Sarpy County showed, under § 17-407(2), that Gretna annexed agricultural land that is rural in character. Though the parties'

---

[1] *SID No. 196 of Douglas Cty. v. City of Valley*, 290 Neb. 1, 858 N.W.2d 553 (2015).

[2] *Id.*; *United States Cold Storage v. City of La Vista*, 285 Neb. 579, 831 N.W.2d 23 (2013); *Swedlund v. City of Hastings*, 243 Neb. 607, 501 N.W.2d 302 (1993).

[3] *Id*.

[4] See *SID No. 196 of Douglas Cty., supra* note 1.

experts provided conflicting testimony as to how the property should be characterized, neither party contends that there are any genuine issues of material fact as to how the area should be characterized under the relevant statutory authority. A conflict of expert testimony regarding an issue of fact establishes a genuine issue of material fact which precludes summary judgment.[5] The key element of the rule is whether the experts conflict on a question of fact or a question of law.[6] Two experts coming to different legal conclusions on the same issue does not create a material issue of fact.[7] Here, because neither party contends that there are any genuine issues of material fact as to how the area should be classified under the relevant statutory authority and because our review of the record confirms there are no triable issues of fact, this appeal solely concerns a question of law, which we resolve independently of the decision of the district court. Essentially, we must decide whether Gretna has the authority to annex an area which is in close proximity to developing areas and which is planned for development, but is presently undeveloped and is being used for agricultural purposes.

[7,8] Section 17-407(2) provides that cities of the second class may annex contiguous or adjacent lands which are urban or suburban in character and prohibits the annexation of "agricultural lands which are rural in character." We have previously recognized that this language does not prohibit annexation of all agricultural lands, but only those agricultural lands which are rural in character.[8] "[L]ands may be currently utilized in an agricultural fashion and still not be rural in character."[9] The

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] See, e.g., *Bierschenk v. City of Omaha*, 178 Neb. 715, 135 N.W.2d 12 (1965).

[9] *Voss v. City of Grand Island*, 186 Neb. 232, 236, 182 N.W.2d 427, 430 (1970).

word "rural" is defined as "of or pertaining to the country as distinguished from a city or town," and the word "urban" is defined as "of or belonging to a city or town."[10]

[9,10] The burden is on the one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity.[11] To determine whether lands are urban or suburban, or rural, the test is "'whether a city has arbitrarily and irrationally used the power granted therein to include lands entirely disconnected, agricultural in character, and bearing no rational relation to the legitimate purposes of annexation.'"[12]

Gretna argues that Sarpy County failed to prove that the ordinances are invalid. Gretna argues that while there is no dispute that the contested parcels were undeveloped and were being used for agricultural purposes, the location of the area and its proximity to growth areas show that the annexed territory is urban or suburban in character. Upon de novo review, we conclude that Gretna's arguments are well founded. The annexed territory does bear a rational relation to legitimate purposes of annexation, and the district court erred in finding that the annexed territory contained agricultural land that is rural in character.

[11] In its determination, the district court characterized the contested areas primarily based on current uses. In its appellee brief, Sarpy County's principal defense of the court's decision is that the parcels are currently undeveloped and are being used for agricultural purposes. However, this argument is flawed, because this court has previously stated that "'[t]he use of land for agricultural purposes does not necessarily mean it is rural in character. It is the nature of its location as well

---

[10] *Wagner v. City of Omaha*, 156 Neb. 163, 168, 55 N.W.2d 490, 494 (1952).

[11] *Id*. Accord, *Omaha Country Club v. City of Omaha*, 214 Neb. 3, 332 N.W.2d 206 (1983); *Bierschenk, supra* note 8.

[12] *SID No. 196 of Douglas Cty., supra* note 1, 290 Neb. at 10-11, 858 N.W.2d at 561, quoting *Voss, supra* note 9. See *Wagner, supra* note 10.

as its use which determine[] whether it is rural or urban in character.'"[13]

The district court primarily relied upon our 1952 decision in *Wagner v. City of Omaha*.[14] In *Wagner*, property owners challenged an ordinance which annexed unincorporated land east of Omaha, Nebraska, near the Missouri River. The area experienced standing water during wet seasons, but ordinarily was dry and could be farmed. The area contained limited retail and industry. The district court declared the ordinance invalid and enjoined the city from enforcing it. We affirmed, because "somewhere between 90 and 103 acres of the area sought to be annexed is unplatted agricultural lands which are rural in character and over which the city did not have authority to extend its boundary."[15]

The district court here found that Gretna annexed agricultural land that is rural in character, because, as in *Wagner*, the contested parcels within ordinance No. 2003 were not platted into lots, were not planned for any subdivisions, were not connected to sewer and water services until development occurs, and were being used for agricultural or horticultural purposes. This analysis is correct to a point. However, under this court's precedent, further inquiry is required when examining the overall character of annexed territory.

As Gretna set forth in its brief, in determining whether agricultural land is rural in character, in addition to considering the annexed area's current use, this court has considered other factors such as an area's proximity to growth areas,[16] including the "undisputed location, character, and degree of

---

[13] *Omaha Country Club, supra* note 11, 214 Neb. at 6, 332 N.W.2d at 208 (emphasis omitted). Accord, *Voss, supra* note 9; *Sullivan v. City of Omaha*, 183 Neb. 511, 162 N.W.2d 227 (1968).

[14] *Wagner, supra* note 10.

[15] *Id*. at 170, 55 N.W.2d at 495.

[16] *Swedlund, supra* note 2; *Sullivan, supra* note 13.

development of the land involved herein."[17] In *Voss v. City of Grand Island*,[18] we found that although the annexed territory included isolated spots that were vacant and used for agricultural purposes, the continuous development of the land and surrounding areas was "clearly indicative and persuasive that the land is urban and suburban in character and not rural in character." In *Sullivan v. City of Omaha*,[19] the city annexed an irregular tract of land abutting the corporate limits, a portion of which was used for agricultural purposes, had no improvements, and had not been subdivided or platted. We found that the challengers failed to meet their burden, because "[t]he entire area being annexed goes through the heart of a rapidly developing residential and industrial area."[20]

Sarpy County does not contest that Gretna is rapidly developing, but argues that the trend of development has been to the north and west, and not to the east and south, where the contested parcels are located. Sarpy County therefore argues this case is unlike *Sullivan*. This argument is insufficient to overcome the area's urban character.

Under the relevant authority, there is no requirement for Gretna to show that the annexed area goes through the heart of a rapidly developing area. In the 70 years since our decision in *Wagner*,[21] we have repeatedly recognized that land need not already be zoned and developed into a nonagricultural use before it can be annexed.[22] We have noted that any such construction of the annexation statutes would seriously impair intelligent planning and coordination of the changeover

---

[17] *Voss, supra* note 9, 186 Neb. at 237, 182 N.W.2d at 430.

[18] *Id*.

[19] *Sullivan, supra* note 13.

[20] *Id*. at 515, 162 N.W.2d at 230.

[21] *Wagner, supra* note 10.

[22] *SID No. 196 of Douglas Cty., supra* note 1; *Voss, supra* note 9; *Sullivan, supra* note 13.

in the use of land for urban purposes.[23] Moreover, the statute governing annexation does not require that an annexed territory have regular boundaries, because cities do not tend to grow in straight lines.[24]

Here, the district court failed to give sufficient consideration to contemplated future development of the annexed area. Under the city's 2017 comprehensive plan update, the proposed I-80 interchange at 192d Street and the existing Highway 370 corridor are designated as community entrance and special character areas and are expected to develop the contested areas into the city's future growth areas. The city, the county, the state, and other governmental agencies all have plans to develop the area, because it is the fastest growing area in Nebraska. These are characteristics "belonging to a city" and not "pertaining to the country" and are accordingly urban or suburban in nature.

In our most recent decision on this issue, *SID No. 196 of Douglas County v. City of Valley*,[25] we rejected the challenger's argument that the city had annexed agricultural land that is rural in character where there had been no residential development on the property at the time of summary judgment. We considered the evidence of contemplated future development[26] and concluded that the challenger's argument failed to establish that the city had exercised its annexation authority arbitrarily and irrationally. We further concluded that the land in question, at the time of annexation, did bear a "'rational relation to the legitimate purposes of annexation.'"[27] Likewise here, even though the plans for development will take time, we are not persuaded that the city has acted arbitrarily or irrationally.

---

[23] *Id.*

[24] See *Bierschenk, supra* note 8.

[25] *SID No. 196 of Douglas Cty., supra* note 1.

[26] *Id*. See, also, *Swedlund, supra* note 2.

[27] *SID No. 196 of Douglas Cty., supra* note 1, 290 Neb. at 11, 858 N.W.2d at 561.

There was evidence that development in the area was already underway. All of the contested parcels are located within the rapidly growing Gretna school district. Ten of the contested parcels are located within 1 mile of a new elementary school building to open in the fall of 2021 with 400 students enrolled. In *Bierschenk v. City of Omaha*,[28] we found that although portions of annexed territory were used for agricultural purposes, evidence of residential growth in the form of parks, schools, churches, and other public grounds showed that the area was urban or suburban in character. Moreover, Gretna's appraiser, Rengo, stated that the future development or residential value of the annexed territory exceeded its agricultural use value. In our decision in *Holden v. City of Tecumseh*,[29] we evaluated land that was principally used for agricultural purposes, but had a residential or commercial use value which exceeded its agricultural use value, and found that development had occurred which made the area urban or suburban in character rather than rural. We do not suggest that increased property values are the only factor to consider in determining whether property is urban or suburban or rural in character. Rather, multiple factors such as current use, location, and future plans for development should be considered in conjunction with property values to determine the overall character of annexed land.

Additionally, Sarpy County failed to show that Vala's is rural in character. The record shows that Vala's commenced operations in the early 1990's as a seasonal commercial and recreational facility operating from September to November each year. Since its beginnings, Vala's has expanded its operations to involve over 100 buildings, structures, and attractions, as well as 4,964 parking spots. Pursuant to special use permits issued by the county, Vala's now runs multiple commercial

---

[28] *Bierschenk, supra* note 8.

[29] *Holden v. City of Tecumseh*, 188 Neb. 117, 195 N.W.2d 225 (1972), citing *Voss, supra* note 9, and *Sullivan, supra* note 13.

operations from May to November each year. In *Plumfield Nurseries, Inc. v. Dodge County*,[30] we considered the annexation of an area with a nursery business, accessed by gravel roads, which had never been platted. We found that the nursery, although involved in agricultural pursuits in the same manner as in some rural territories, was a business in the ordinary sense and was urban in character.[31]

Adjacent to the south of Vala's are parcels 19 through 22, located south of I-80. Under § 17-407(2), the annexation authority of a city of the second class includes "any contiguous or adjacent lands, lots, tracts, streets, or highways as are urban or suburban in character and in such direction as may be deemed proper."[32] Parcels 19 through 22 are located within 1 mile south of the proposed future I-80 interchange at South 192d Street. Parcels 19 through 21 are zoned "AG-HC," for agricultural with a highway corridor overlay, and are currently used for interim crop production. Parcel 22 is zoned "AGD," for agricultural development, and is currently used for interim crop production and for operating a highway commercial business which operates under a special use permit. Sarpy County's future land use plan designates these subject properties for general commercial use.

Parcel 19 is located within the Papillion Creek Watershed and the Platte River Watershed. Parcels 20 through 22 are located within the Papillion Creek Watershed. According to Rengo, the subject properties are not located in a flood hazard area. All public utilities are able to be extended to the properties within the Papillion Creek Watershed, and all utilities, except for sewer, are able to be extended to the portion of parcel 19 located in the Platte River Watershed. Rengo stated

---

[30] *Plumfield Nurseries, Inc. v. Dodge County*, 184 Neb. 346, 167 N.W.2d 560 (1969).

[31] *Id*.

[32] See *Sullivan, supra* note 13.

in his reports regarding each of these parcels that the properties contain no other known physical characteristics that would limit development. Rengo opined that the maximal productive use of the subject properties would be to develop for subdivision purposes, with demand.

Having considered the present uses of the annexed territory, as well as its contemplated future uses and existing plans for development, we find that the annexed area is urban in character and that the ordinances are a lawful exercise of the city's annexation powers.

For completeness, we address novel arguments raised by Sarpy County and relied upon by the district court. Sarpy County argues that the greenbelt tax assessment status of the contested parcels render them rural in character. Under § 77-1344, land qualifies for special valuation if (a) the land is located outside the corporate boundaries of any SID, city, or village, unless it is in a conservation or preservation easement, and (b) the land is agricultural or horticultural land. Sarpy County refers to 350 Neb. Admin. Code, ch. 11, § 001.01 (2009), to argue that the purpose of greenbelt status is to provide protection for those persons who wish to continue working in agriculture. We find nothing in the law which leads us to believe that the Legislature intended greenbelt tax assessment status to function as a restriction on a city's annexation authority. Rather, greenbelt status concerns a separate legislative determination regarding taxation and market value. Additionally, given the evidence of the Sarpy County assessor that all agricultural parcels within Sarpy County have a market value that is influenced by nonagricultural factors, we find no reason why the greenbelt status of the contested parcels qualifies as particular evidence of rural character.

[12,13] Lastly, the district court accepted Sarpy County's argument that annexation would eliminate SID's in the area, and would therefore limit resources available for development. This argument is not relevant to the question of whether the city acted within its annexation authority. The annexation of

land by a city is a legislative matter.[33] However, courts have the power to inquire into and determine whether the conditions exist which authorize the annexation thereof.[34] In doing so, it is not for the courts to determine what portions of land may be properly annexed, because the fixing of boundary lines under this authority is a legislative act.[35]

Based upon all of the foregoing, Sarpy County has failed to prove that the ordinances adopted by Gretna are invalid. Gretna's appeal has merit.

## CONCLUSION

The annexation ordinances and zoning extension ordinances adopted by Gretna were valid under the relevant statutory authority. The judgment of the district court should be and is hereby reversed.

REVERSED.

---

[33] *Wagner, supra* note 10.

[34] *Id.*

[35] *Id.*

CASSEL, J., dissenting.

Because the "reach" of Gretna's ordinances exceeds the "grasp" authorized by state annexation law,[1] I would affirm the district court's judgment. Where any part of a municipal annexation is of agricultural lands which are rural in character, the entire ordinance must be invalidated, because the drawing of boundary lines is a legislative act and a court has no authority to revise the boundary line of a city, as extended by the ordinance.[2]

The majority opinion fails to apply the principle here to agricultural land. Particularly, tracts 19 through 22 are separated

---

[1] See Neb. Rev. Stat. § 17-407(2) (Cum. Supp. 2020).

[2] See, *County of Sarpy v. City of Papillion*, 277 Neb. 829, 765 N.W.2d 456 (2009); *Wagner v. City of Omaha*, 156 Neb. 163, 55 N.W.2d 490 (1952).

from the other lands by the interstate highway, lie in the Platte River Watershed and/or the Papillion Creek Watershed, lack infrastructure or plans for development, are used for agriculture, and remain largely untouched without any financially feasible means of development. The majority's characterization of these tracts as urban or suburban seems to flow from the notion that development is inevitable at some future time (despite Gretna's expert's recognition that future development depends upon "demand" that does not now exist). But that is not the proper test and fundamentally departs from our case law, which is driven by longstanding statutory language.

Further, I am troubled by the majority opinion's reliance on a fleeting reference to increased property value in *Holden v. City of Tecumseh*.[3] The *Holden* court's decision was driven by the peculiar growth of Tecumseh in an "L" shape around the annexed tract. The reference there to value must be viewed in that context. Here, Gretna has been growing away from, not near or around, the contested parcels—especially tracts 19 through 22. Despite the majority's attempt to disclaim its opinion's effect, it allows Gretna to justify its overreach by citing increased property valuations—which exist around any city's limits—to annex rural agricultural land. This approach paves the way for a city to expand in any direction it wants, regardless of its directional development, by citing increased property valuations.

I respectfully dissent.

---

[3] *Holden v. City of Tecumseh*, 188 Neb. 117, 195 N.W.2d 225 (1972).